No. 03-307

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 355

STATE OF MONTANA,

> Plaintiff and Respondent,

v.

DEWAYNE BEARCHILD,

> Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. CDC-02-068,
The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender Office, Helena, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Mark W. Mattioli,
Assistant Attorney General, Helena, Montana

Brant Light, Cascade County Attorney; John Parker, Deputy County
Attorney, Great Falls, Montana

Submitted on Briefs:  December 11, 2003

Decided:  December 16, 2004

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     Dewayne Bearchild (Bearchild) was charged with the crime of incest on February 14, 2002. On the day of trial, December 2, 2002, but before voir dire proceedings began, the prosecutor moved to challenge two jurors for cause. Bearchild objected to both challenges. The District Court denied the first challenge, but granted the second challenge. On December 3, 2002, the jury found Bearchild guilty of incest. Bearchild appeals from the District Court's decision to permit the State to challenge the second juror for cause prior to voir dire. We affirm.

¶2     The sole issue on appeal is whether the District Court substantially complied with the statutory procedure to ensure the fair selection of jurors when it entertained the State's challenge for cause of a juror without an inquiry examination.

## BACKGROUND

¶3     On February 14, 2002, Bearchild was charged with sexual intercourse without consent and incest. Both charges arose from a single incident where Bearchild's step-daughter alleged he touched her inappropriately. Bearchild pleaded not guilty. A trial on the charges began December 2, 2002. Before voir dire proceedings began, Deputy County Attorney John Parker (Parker) requested the District Court to excuse panelist No. 43, Michelle Ellington (Ellington), because she previously worked in the county attorney's office as a receptionist and had access to a wide range of information relating to criminal and youth in need of care cases, both of which Bearchild had been involved in. Further, Parker had recently fired Ellington for unsatisfactory performance. Defense counsel resisted the challenge, arguing

2

an in-court examination of Ellington was required to determine if she would be unfair to either party.

¶4    District Court Judge Neill granted Parker's request because he was concerned about even having Ellington on the jury panel because of the possibility she may have feelings or predilections for one side or the other.  He also felt there was a danger of her communicating with other prospective jurors.  He noted that since she was No. 43 on the venire list, it was unlikely she would ever become an active member of the jury panel.  In fact, after Ellington was removed from the prospective panel, the last juror questioned during voir dire was panelist No. 36.

¶5    After the State's case-in-chief, Bearchild moved for a directed verdict on the sexual intercourse without consent charge, arguing there was no evidence of penetration.  The District Court granted the motion and dismissed the charge.  However, the jury found Bearchild guilty of incest.

¶6    On January 28, 2003, Bearchild was sentenced to 20 years in the Montana State Prison, five years suspended, with no possibility of parole for ten years.  Bearchild now appeals from the District Court's decision to permit Parker to challenge juror Ellington for cause prior to voir dire.

## STANDARD OF REVIEW

¶7    The District Court's decision to permit the State to challenge a juror for cause prior to a voir dire examination involves a conclusion of law.  We review a district court's conclusion of law to determine if it is correct.  *State v. LaMere*, 2000 MT 45, ¶ 14, 298

3

Mont. 358, ¶ 14, 2 P.3d 204, ¶ 14.

## DISCUSSION

¶8 Did the District Court substantially comply with the statutory procedure to ensure the fair selection of jurors when it entertained the State's challenge for cause of a juror without an inquiry examination?

¶9 Bearchild argues the District Court's removal of Ellington without an in-court examination constitutes structural error requiring automatic reversal. Relying heavily on our holding and discussion in *LaMere*, Bearchild contends the District Court failed to comply with the statutory jury selection procedures. He claims this error has implications for all defendants, specifically that it affects a defendant's right to an impartial jury and invades the fairness of the entire jury process. Bearchild points to the case of *State v. Blem* (S.D. 2000), 610 N.W.2d 803, where the South Dakota Supreme Court reversed a trial court's decision granting a prosecutor's request to remove two jurors prior to voir dire.

¶10 The State argues the test for structural error was not met in this case and that Bearchild failed to establish presumptive prejudice as required by *State v. Good*, 2002 MT 59, ¶ 59, 309 Mont. 113, ¶ 59, 43 P.3d 948, ¶ 59. Although the State does not dispute there may have been a technical violation of the jury selection statutes, it argues the District Court's removal of Ellington was harmless because the composition of the jury was not affected and Ellington would never have served on the jury in any event.

## A. Jury Selection Statutes.

¶11 Section 46-16-115, MCA, governs challenges for cause. It permits the challenge of

4

a juror having a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party. Section 46-16-115(2)(j), MCA. Further, the statute provides that a judge may grant a challenge for cause for any reason the court determines. Section 46-16-115(2), MCA. The statute provides that "each challenge must be tried by the court." Section 46-16-115(1), MCA.

¶12 Under the federal jury selection statutes, it is permissible for a court to exclude a juror for hardship or bias prior to voir dire. *United States v. Contreras* (10th Cir. 1997), 108 F.3d 1255, 1269. In *Contreras*, the court stated:

> [W]e are aware of no authority holding a defendant's right to an impartial jury is violated per se by the pre-voir dire excusal of jurors. In fact, the Jury Selection and Service Act indicates the district court may properly exclude summoned jurors prior to voir dire based on hardship or bias. See 28 U.S.C. § 1866(c).

*Contreras*, 108 F.3d at 1269.

¶13 Other Circuit Courts of Appeals have deemed certain pre-voir dire dismissals proper. *See e.g. United States v. North* (D.C. Cir. 1990), 910 F.2d 843, 909-10 (pre-voir dire excusal of jurors for cause not erroneous), *superseded in part on other grounds*, 920 F.2d 940 (D.C. Cir. 1990), *cert. denied*, 500 U.S. 941 (1991); *United States v. Paradies* (11th Cir. 1996), 98 F.3d 1266, 1279-80 (district court did not commit "substantial violation" of the federal Jury Selection Act by excusing jurors *sua sponte* prior to voir dire based solely on their answers to juror questionnaires).

¶14 We conclude the District Court erred when it excused the jurors for cause before voir

dire.  Our statutes are fairly explicit as to the need for an in-court examination of the juror when considering a challenge for cause.  Section 46-16-115(1), MCA, specifically provides that a challenge for cause must be tried by the court.  There was no "trial" when the court considered the challenges prior to voir dire.

**B.  Substantial Compliance**.

¶15    While it is true statutory jury selection procedures are designed to protect against violations of the underlying constitutional right to a fair and impartial jury, *LaMere*, ¶ 65, not every violation of the statutory process governing the formation of a trial jury results in reversal.  *LaMere*, ¶ 55.  Technical departures from the jury selection statutes and violations which do not threaten the goals of random selection and objective disqualification do not constitute a substantial failure to comply.  *LaMere*, ¶ 58.  Thus, we require a "substantial compliance" with the statutory procedures to ensure the right to an impartial jury will remain inviolate for all.  *LaMere*, ¶ 68.

¶16    In *LaMere*, a Native American defendant appealed a district court's denial of a pre-trial motion to strike the entire jury panel, on the basis that telephone summoning of jurors by the court clerk constituted a substantial failure to comply with statutory jury panel selection procedures.  We held the failure to summon jurors by mailing or personally serving prospective jurors with written jury summons constituted failure to substantially comply with the statute, and was structural error affecting the essential fairness of the trial, resulting in per se reversible error.  *LaMere*, ¶ 75.

¶17    We stated that a material failure to substantially comply with Montana statutes

governing the procurement of a trial jury cannot be treated as harmless error because: (1) such an error precedes the presentation of any evidence to the jury, and cannot be analyzed as mere trial error without resorting to speculation; (2) such an error, because it precedes the trial process, cannot be quantitatively assessed for its prejudicial impact relative to the evidence introduced at trial; (3) such an error, being other than an error in the trial process, affects the very framework within which the trial proceeds; and (4) the impartiality of the jury goes to the very integrity of our justice system, and the right to an impartial jury is so essential to our conception of a fair trial that its violation cannot be considered harmless error. *LaMere*, ¶ 50.

¶18    Further, in *Good*, we reiterated that structural error occurs when there is a material failure to substantially comply with statutes governing the procurement of a trial jury. *Good*, ¶ 60. We even went as far as to say that "[e]rrors involving jury selection indelibly affect the fairness of the trial since the errors precede the trial." *Good*, ¶ 60 (citation omitted). However, in *Good*, we were reviewing the district court's discretion in denying a defendant's challenges for cause. It is important to point out this Court is not reviewing the merits of the State's challenge for cause–only the District Court's decision to entertain the challenge prior to voir dire proceedings.

¶19    A material failure to substantially comply with Montana's jury selection statutes does result in structural error requiring reversal. *Good*, ¶ 60; *LaMere*, ¶ 75. Unlike in *LaMere*, however, the District Court's error was not a material failure to substantially comply with Montana's statutes governing the procurement of a trial jury.

¶20    The entire jury pool was affected by the error in *LaMere*. Every member of the jury

7

pool was contacted by telephone, thus excluding an entire class of people who did not own a telephone. We stated that the impact of this type of violation on the trial process, "cannot be discerned from the record" and is so "purely speculative" that prejudice to the defendant is presumed. *LaMere*, ¶ 41 (citation omitted).

¶21 Here, however, Bearchild is not challenging the cross-sectional composition of the jury. In truth, he is not even challenging the impartiality of the jury. Bearchild is, in essence, challenging a specific juror. Although a defendant is entitled to an impartial jury, he has no right to a particular juror. *LaMere,* ¶ 37 (citing *State v. Gollehon* (1993), 262 Mont. 1, 11, 864 P.2d 249, 255; *State v. Taylor* (1975), 168 Mont. 142, 146, 542 P.2d 100, 102; *Tribby v. Northwestern Bank of Great Falls* (1985), 217 Mont. 196, 208, 704 P.2d 409, 416).

¶22 Even though it occurred prior to trial, the impact of Ellington's dismissal can be discerned from the record. The outcome of Bearchild's trial would be the same regardless of Ellington's dismissal, because as No. 43 on the venire, she never would have served on the jury in any event. In contrast to *LaMere*, the error in this case can be isolated and assessed for its prejudicial impact; Ellington's dismissal did not affect Bearchild's right to an impartial jury.

¶23 Thus, while the District Court committed error in excusing the jurors for cause prior to voir dire, its action was not a material failure to substantially comply with Montana's statutes governing the procurement of a trial jury.

**C. Harmless Error**.

¶24 If the district court substantially complies with the Montana statutes regarding jury

procurement, then the error is not structural. *LaMere*, ¶¶ 47-50; *Good*, ¶ 60. If the error is not structural, harmful error review applies. *LaMere*, ¶ 25; *Good*, ¶¶ 60-61. Montana's harmful error statute provides that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Section 46-20-701(2), MCA. While harmless error generally occurs during the actual trial, *LaMere,* ¶ 41, and is often referred to as "trial error," *Good*, ¶ 61, it also applies to "technical or immaterial violations" of the statutory jury selection scheme. *LaMere*, ¶¶ 60-61. Prejudice will not be presumed where the record shows the district court's error affected neither the constitutional or jurisdictional rights of the defendant, and the defendant on appeal has failed to demonstrate prejudice to his substantial rights resulting from the error. *State v. Austad* (1982), 197 Mont. 70, 87, 641 P.2d 1373, 1382.

¶25 Bearchild cannot demonstrate prejudice to his right to an impartial jury based on the District Court's error because even if Ellington had not been dismissed prior to the voir dire proceedings, she never would have sat on Bearchild's jury because the last juror empaneled was juror No. 36 and Ellington was juror No. 43.

**D. *South Dakota v. Blem*.**

¶26 Bearchild's reliance on *Blem* is misguided. In *Blem*, the prosecution sent a letter to the trial court and to Blem's attorney requesting it remove two potential jurors. Blem's attorney objected to their removal. At a motions hearing, both sides argued the removal of the jurors to the trial court. The judge dismissed the two jurors. On appeal, Blem argued the statutory jury selection process was violated and that he was denied an opportunity to

determine if the jurors were biased. The South Dakota Supreme Court adopted our rationale in *LaMere* and held the removal of the two jurors was a substantial failure to comply with the jury selection statutes. *Blem*, ¶ 30.

¶27 While we agree with the *Blem* court that removal of potential jurors for cause should occur after voir dire, we disagree that failure to do this constitutes structural error. The *LaMere* rationale applies to structural errors, those that cannot be assessed for their prejudicial impact without speculation. Ellington's dismissal did not affect the entire jury pool. The impact of her dismissal can be assessed without speculation, as she never would have served on Bearchild's jury in any event. The *Blem* court never reached this distinction.

¶28 In sum, we hold the District Court erred when it permitted juror Ellington to be removed from the venire without a proper in-court examination to determine actual bias. However, because the District Court substantially complied with the jury selection statutes, we find this error to be subject to harmless error review. Bearchild did not prove he was prejudiced by this error, and therefore the error was harmless.

¶29 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ JIM RICE

Justice W. William Leaphart dissenting.

¶30 I dissent.

12

¶31 The Court concedes that the District Court committed error when it excused the jurors for cause prior to voir dire and without the in-court examination or "trial" as required by § 46-16-115(1), MCA. The Court concludes, however, that the error did not amount to a "material failure to substantially comply" with statutory procedures, and, thus, the Court engages in a harmless error analysis.

¶32 The Court purports to distinguish the decision in *State v. LaMere*, 2000 MT 45, 298 Mont. 358, 2 P.3d 204, where we held that the failure to summon jurors by mailing or personally serving prospective jurors with written jury summons constituted a material failure to substantially comply with the jury selection statutes. However, in focusing on the fact that the juror in question was panelist #43 and was thus "immaterial" or of no consequence to the jury as empaneled, the Court ignores the analytical principles established in *LaMere*.

¶33 In *LaMere* we held that the "substantial compliance" standard is designed to "protect the random nature and objectivity of the jury selection process." *LaMere*, ¶ 57. "In turn, technical violations–even numerous such violations–that do not frustrate these goals or result in discrimination and arbitrariness do not constitute a substantial failure to comply." *LaMere*, ¶ 58. To be substantial deviation, the departure must be "a material one." *LaMere*, ¶ 59.

¶34 In light of the above principles, we held:

> Therefore, if the statutory violation is "substantial" or "material"–viewed in terms of the underlying principles of ensuring that jury venires are selected randomly and on the basis of objective criteria–then it cannot be considered non-prejudicial to the defendant.

*LaMere*, ¶ 60.

¶35 Importantly, for purposes of this case, we went on in *LaMere* to say:

13

A departure from the statutory scheme that directly or materially affects the random nature or objectivity of the jury selection process establishes a substantial violation *independently of the departure's consequences in an individual case.* Conversely, a mere "technical" or "immaterial" violation–one that does not undermine the objective procedures designed to produce a jury venire consisting of a fair cross-section of the community–constitutes non-prejudicial error under the  substantial compliance standard.

*LaMere*, ¶ 60 (emphasis added).

¶36     Here, the departure from the statutory scheme consists in excusing a panel member without the requisite "trial" by the court.  Thus, the question is, does the excusing of a panel member without trial by the court materially affect the objectivity of the jury selection process?  Under *LaMere*, this question must be answered independently of the departure's consequences (or lack thereof) in this particular case.  Clearly, the excusing of prospective jurors at the behest of a litigant, without a statutorily required "trial" by the court "materially affects" the objectivity of determining juror disqualification.  The error was thus structural in nature, and the Court should not have adopted a harmless error rationale.

/S/ W. WILLIAM LEAPHART


Chief Justice Karla M. Gray and Justice James C. Nelson join in the foregoing dissent.

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON