DA 12-0238

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 10

STATE OF MONTANA,

   Plaintiff and Appellee,

 v.

NEAL EDWARD FEHRINGER,

   Defendant and Appellant.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
        In and For the County of Yellowstone, Cause No. DC 10-0565
        Honorable Mary Jane Knisely, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

      Michael B. Anderson, Anderson & Liechty, P.C., Billings, MT

   For Appellee:

      Timothy C. Fox, Montana Attorney General; Mardell Ployhar, Assistant
      Attorney General, Helena, MT

      Scott Twito, Yellowstone County Attorney; Kimberly Hamm, Deputy
      County Attorney, Billings, MT

          Submitted on Briefs: December 4, 2012
              Decided: January 22, 2013

Filed:

      _____
             Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Neal Fehringer appeals the District Court's order affirming his Justice Court conviction and sentence for partner or family member assault.  We affirm.

¶2     Fehringer presents the following issues for review:

¶3     Issue One:  Whether the Justice Court jury was properly called.

¶4     Issue Two:  Whether the charge against Fehringer should have been dismissed because the complaint and notice to appear were defective.

¶5     Issue Three:  Whether the jury should have been instructed on disorderly conduct as a lesser-included offense.

### PROCEDURAL AND FACTUAL BACKGROUND

¶6     On March 29, 2010, Fehringer argued with his wife over whether they should engage in intercourse.  She went downstairs and saw a box for a blow-up sex doll left by their son. She wrote a note to Fehringer on the box stating that it was what he had been looking for, for only $19.99, and that the two of them could be happy together.  Fehringer came into the room, saw the note and hit his wife with the box.  As she walked away from him he pushed her into a refrigerator, breaking her watch and causing bruising on her face, arm and shoulder.  She later reported the incident to the Sheriff's Department.

¶7     Deputy Eckart interviewed Fehringer and he admitted throwing the box at his wife and pushing her into the refrigerator.  Eckart prepared a complaint and notice to appear in Yellowstone County Justice Court that charged Fehringer with partner or family member assault.  Fehringer appeared for arraignment on April 6, 2010, and on that date the Justice Court set a bench trial for August 10, 2010.  Justice of the Peace Hernandez conducted an

2

omnibus pre-trial hearing on June 15, 2010. The resulting order required that a demand for a jury trial be filed within 20 days, and that a demand for a jury trial made within 10 days of the trial date would be deemed to be a motion for a continuance of the trial. Both Fehringer and his attorney signed the omnibus hearing order.

¶8 On July 14, 2010, the prosecution moved to continue the trial due to the unavailability of witnesses, and trial was reset for September 28, 2010. On September 21 the prosecution again moved to continue the trial due to the unavailability of witnesses, and trial was reset for October 5, 2010. On the morning set for the bench trial, Justice of the Peace Hernandez recused himself because Fehringer's attorney had represented Hernandez in a prior unrelated matter. Fehringer's attorney then demanded a jury trial for the first time and the case was transferred to Justice of the Peace Herman. Justice Herman granted Fehringer's demand for a jury trial, and Fehringer refused to waive speedy trial.

¶9 Because of Fehringer's late demand for a jury trial and his refusal to waive speedy trial, Justice Herman set the jury trial for the next day, October 6, 2010. The Clerk of the Justice Court summoned a jury by telephoning members of a jury pool previously drawn by the District Court. The Clerk excused some persons who were called and who had conflicts serving on a jury trial the next day. At trial on October 6 Fehringer admitted to throwing the box at his wife and then pushing her. The jury found Fehringer guilty of partner or family member assault. The Justice Court sentenced Fehringer to one year in jail with all but 5 days suspended and a $500 fine.

3

¶10     Fehringer appealed his conviction to District Court. The District Court affirmed the conviction by order dated March 12, 2012.[1]  Fehringer appeals.

## STANDARD OF REVIEW

¶11     The applicable standard of review will be noted in the discussion of each issue.

## DISCUSSION

¶12     *Issue One: Whether the Justice Court jury was properly called*.  A court's decision on a challenge to the composition of the jury is a conclusion of law that this Court reviews to determine whether it is correct.  *State v. Bearchild*, 2004 MT 355, ¶ 7, 324 Mont. 435, 103 P.3d 1006.

¶13     For approximately six months (April 6, 2010, until October 5, 2010) the charge against Fehringer was set for a bench trial in Justice Court.  Pursuant to the omnibus hearing order of June 15, 2010, Fehringer had 20 days from that date to demand a jury trial.  He did not do so.  Pursuant to the omnibus hearing order, a late demand for a jury trial would be deemed a motion for a continuance.  Fehringer made a demand for jury trial on October 5, 2010, well beyond the date provided in the omnibus hearing order, and that demand was not treated as a motion for a continuance.  Rather, the prosecution, the Justice of the Peace, and the Clerk of the Court all scrambled to provide a jury to try Fehringer the next day, October 6, 2010.  That date was the trigger for speedy trial dismissal in Justice Court, § 46-13-401(2), MCA (misdemeanor charge must be dismissed if not brought to trial in six months, "unless good cause to the contrary is shown.")  While the primary reason for delay in bringing

---

[1] The Court notes the irony inherent in the fact that the District Court decision was delivered more than 17 months after the Justice Court verdict in a case where speedy trial was an initial concern.

Fehringer's case to trial was the two continuances requested by the prosecution, the sole reason for having to assemble a jury on very short notice was Fehringer's tardy demand for a jury trial.

¶14 Fehringer's attorney conducted voir dire and passed the jury panel for cause and the case went to trial in Justice Court. Fehringer did not raise the jury selection issue until he had been convicted in Justice Court and appealed to District Court pursuant to § 25-33-103, MCA. At that time he argued that there was error because it was "unknown" how the jurors were selected from the jury pool, and that there was "no evidence" that prospective jurors were properly contacted and excused from service, citing §§ 3-15-312 and -313, MCA.

¶15 In the District Court appeal the prosecution responded with an affidavit from the Justice Court Clerk describing the "routine" process for calling jurors. Pursuant to that practice the Justice Court obtains a computer-generated list of a juror pool from the District Court. A computer program then randomly selects potential jurors from that District Court pool. The Justice Court Clerk then uses the telephone to call persons on the potential juror list for service (in this instance, for the next day). The Clerk excuses potential jurors who have conflicts such as scheduled medical appointments or travel.

¶16 In addition to the affidavit, the record contains a "Justice Court of Record Panel List." That list contains the names of the pool of approximately 60 potential jurors that the Justice Court received from the District Court. Notes on the list indicate that the Justice Court Clerk contacted or attempted to contact about 30 of these persons by phone. Approximately 16 names are highlighted in yellow, apparently indicating potential jurors who were contacted and who could serve the next day. There are brief handwritten notations about attempts to

5

contact others on the list. There are indications that messages were left with eight potential jurors, and the word "no" or "not available" is written beside the names of an additional five.

¶17 The District Court on appeal noted that Fehringer does not argue that he did not receive an impartial jury, but rather argues that there may have been technical variations by the Clerk of the Justice Court from the statutory requirements for jury pool selection. The District Court found that the jury selection process was expedited (to fit Fehringer's late jury demand within the speedy trial deadline), and that even if the process for calling the jury pool "deviated slightly from the norm . . . the jury pool was still selected randomly." Further, the District Court found that there was "no evidence that jurors were excused for any reason other than scheduling conflicts" and that juror excuses were issued for "wholly objective" reasons.

¶18 Fehringer argues that the Justice Court Clerk lacked authority to excuse potential jurors who were contacted by phone and who indicated that they had a conflict with serving the next day. He argues that once he questioned the propriety of jury selection (in the appeal to the District Court), the prosecution bore the burden of demonstrating in the record that all statutory requirements had been met. Fehringer contends that absent such a demonstration his conviction must be reversed. Fehringer relies upon *Tribby v. Northwestern Bank*, 217 Mont. 196, 205, 704 P.2d 409, 415 (1985) to support his argument that he is entitled to reversal unless the record demonstrates the answers to each of his speculations on how the jury pool selection process may have been flawed. *Tribby* involved apparently clear evidence that the clerk of court phoned prospective jurors and asked them questions furnished by one of the parties without the knowledge of the other party. *Tribby* does not

6

stand for the proposition that a defendant upon appeal may place the burden of proof upon the prosecution and a burden of demonstration upon the record simply by alleging that there might have been a failure to follow all statutory requirements for calling a jury.

¶19 The clerks of the district courts prepare lists of potential jurors, "selected in any reasonable manner that ensures fairness," and furnish those lists to each justice, municipal and city court in the county. The lists must be filed with the clerk of the district court and must be posted in a public place in each county, city or town. Section 46-17-202, MCA. The clerk of the justice court serves as the "jury commissioner" for that court. Section 3-15-404, MCA. The justice of the peace, or the jury commissioner "with the approval of the court" must ("shall") excuse a potential juror upon a "finding that jury service would entail undue hardship for the person." Section 3-15-313(1), MCA; *Tribby*, 217 Mont. at 205, 704 P.2d at 415.

¶20 In the present case, the Clerk of the Justice Court, acting as the jury commissioner, apparently excused five persons from the list of 60 because they had medical appointments or were traveling the next day when Fehringer's jury trial would take place. The District Court found that this was the routine practice for the Justice Court, and Fehringer did not present any evidence to support his allegation that the excuses were made without the approval of the Justice Court as provided by § 3-15-313, MCA.

¶21 Fehringer does not complain that the jury pool received from the Clerk of the District Court was improperly drawn. He does not complain that any particular juror who heard his case was not qualified to serve or should have been excused, and he does not complain that he failed to receive a fair trial from the jury. Fehringer only complains that he could not find

7

in the record sufficient evidence to prove compliance with § 3-15-313, MCA. However, it was Fehringer who, upon appeal of his conviction to the District Court, raised the accusation that the Clerk of the Justice Court failed to follow the law. Fehringer had the burden to prove his contention to the District Court and did not do so. The District Court properly concluded that there was substantial compliance with § 3-15-313, MCA.

¶22 *Issue Two: Whether the charge against Fehringer should have been dismissed because the complaint and notice to appear were defective.* This Court reviews a trial court's denial of a motion to dismiss a criminal charge for lack of probable cause for abuse of discretion. *State v. Elliott*, 2002 MT 26, ¶ 27, 308 Mont. 227, 43 P.3d 279.

¶23 Fehringer contends that the Justice Court required him to stand trial based upon a defective notice to appear and based upon an allegation of "possible cause" rather than upon the required standard of "probable cause." *See* § 46-11-110, MCA. He did not raise these issues in the six months prior to the October 6 trial date, but rather waited until the first witness had been sworn and then filed a motion to dismiss the charge.

¶24 The charge against Fehringer arose from the notice to appear and complaint on a form prepared by Deputy Eckart. Fehringer complains about two entries on that form. First, he argues that the form erroneously cites § 45-5-206(2), MCA, as the statute that Fehringer violated. Section 45-5-206, MCA, establishes the offense of partner or family member assault, but subsection (2) only defines the terms "family member" and "partner." Second, he argues that the affidavit of probable cause portion of the form recites the basic facts of the confrontation between Fehringer and his wife, and that he pushed her into the refrigerator "pausably" causing bruises to her face, shoulders and hand. Fehringer insists that this word

8

should be construed to be "possibly" and therefore that the affidavit is based on "possible cause" rather than "probable cause."

¶25    The purpose of charging documents is to reasonably appraise the accused of the charges against him so that he has the opportunity to prepare and present a defense. *State v. Wilson*, 2007 MT 327, ¶ 25, 340 Mont. 191, 172 P.3d 1264.  The charging documents must be read together, *Elliott*, ¶ 26, and are sufficient if a person of common understanding would know what was charged.  *State v. Hocter*, 2011 MT 251, ¶ 16, 362 Mont. 215, 262 P.3d 1089.  A charging document that contains an erroneous name for the offense or an erroneous statutory reference is not invalid if the charging language meets the "common understanding" test.  *State v. Bahr*, 2009 MT 378, ¶ 9, 353 Mont. 294, 224 P.3d 610.

¶26    In this case, while Deputy Eckart erroneously cited to a subsection of § 45-5-206, MCA, immediately below that entry Eckart wrote that Fehringer was accused of "the crime of partner/family member assault.  To wit: caused bodily injury to his wife."  Immediately below that entry, Eckart's narrative of probable cause stated:

> On 3-29-10 the def and his wife got into an argument.  The def's wife gave him a sex doll which upset him.  He threw sex doll box at her hitting her, unknown where.  They argued some more and he pushed her.  She hit the refrigerator pausably causing a bruise on her face, shoulders, and hand.  The def gave a statement after given the Miranda warning.

It is clear from the notice to appear that Fehringer had adequate notice of the charge against him and of the facts upon which it was based.  The erroneous citation to a subsection of § 45-5-206, MCA, was de minimus.  The charging document here would clearly inform a person of common understanding that he had been charged with "the crime of partner/family member assault" for hitting his wife with a box and pushing her into a refrigerator.  At his

9

initial appearance on the charge Fehringer expressly acknowledged his understanding that he was charged with partner or family member assault under § 45-5-206, MCA. Fehringer does not claim any surprise or any lack of understanding of the charge against him, and his waiting until the day of trial to raise the issue would belie any such claim. *Bahr*, ¶ 11.

¶27 Second, Fehringer contends that the word "pausably" as used in the affidavit of probable cause should be read as "possibly" and therefore that word taints the affidavit which must be based upon "probable" cause. Section 46-11-110, MCA, requires that upon presentation of a complaint charging an offense, the court must examine the sworn complaint to determine whether probable cause exists to allow filing the charge.

¶28 The law, as noted above, requires that the charging documents be considered in their entirety and against a standard of whether a person of common understanding would appreciate the charge. *Hocter*, ¶ 16. An affidavit in support of a charge need not make out a prima facie case of guilt, and is sufficient if it shows a "mere probability" that the defendant committed the offense. *Elliot*, ¶ 26. Here the charging document completed by Deputy Eckart contains a recital of all the essential facts supporting the charge and expressly informed Fehringer that he was being charged with "partner/family member assault" for "causing bodily injury to his wife." The use of the term "plausibly" or even "pausably" in the narrative does nothing to materially undermine the charging document. The complaint clearly established probable cause that Fehringer committed the offense of partner or family member assault.

¶29 The determination that the charging documents in this case were sufficient under the law was not an abuse of discretion.

10

¶30 *Issue Three: Whether the jury should have been instructed on disorderly conduct as a lesser-included offense.* Whether an offense is a lesser included offense is an issue of law that this Court reviews de novo to determine whether it is correct. *State v. Molenda*, 2010 MT 215, ¶ 3, 358 Mont. 1, 243 P.3d 387.

¶31 Fehringer contends that the District Court erred by refusing his offered jury instructions that would have allowed the jury to convict him of disturbing the peace instead of partner or family member assault. He contends that he was entitled to those instructions because disturbing the peace is a lesser included offense of partner or family member assault. The District Court on appeal held that disorderly conduct did not meet the definition of "included offense" in § 46-1-202(9), MCA, in the context of a charge of partner or family member assault. Therefore, the District Court held that the Justice Court did not err in refusing the lesser included offense instructions.

¶32 A defendant may be found guilty of an offense "necessarily included in the offense charged." Section 46-16-607, MCA. A defendant is entitled to jury instructions on a lesser included offense if that offense is a lesser included offense of the offense charged, and if there is sufficient evidence to support an instruction on the lesser included offense. *State v. Martinosky*, 1999 MT 122, ¶ 18, 294 Mont. 427, 982 P.2d 440. An "included offense" is one that:

> (a) is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
> (b) consists of an attempt to commit the offense charged or to commit an offense otherwise included in the offense charged; or
> (c) differs from the offense charged only in the respect that a less serious injury or risk to the same person, property or public interest or a lesser kind of

11

culpability suffices to establish its commission.

Section 46-1-202(9), MCA. The "facts" referred to in subsection (a) are the statutory elements of the two offenses, not the individual facts of the case. *Molenda*, ¶ 9.

¶33 A person commits the offense of disorderly conduct if he "knowingly disturbs the peace." Section 45-8-101(1), MCA. The statute lists a number of actions that can constitute disturbing the peace, including quarreling or fighting, making loud noise, or discharging firearms. However, for any of these activities to constitute disorderly conduct they must disturb the peace. A person commits the offense of partner or family member assault if he causes bodily injury or reasonable apprehension of bodily injury to a partner or family member. Section 45-5-206, MCA. A defendant therefore may be convicted of partner or family member assault without any proof that the defendant disturbed the peace.

¶34 Since disorderly conduct would not be proven by proof of the same or less than all the elements of partner or family member assault, it is not a lesser included offense of partner or family member assault. Section 45-8-101(1), MCA; *State v. Weatherell*, 2010 MT 37, ¶ 13, 355 Mont. 230, 225 P.3d 1256 (sexual assault is not an included offense of partner or family member assault). The District Court correctly affirmed the decision of the Justice Court to reject the proposed jury instructions.

¶35 The District Court is affirmed.

/S/ Mike McGrath

We Concur:

/S/ Beth Baker
/S/ Michael E Wheat

12

/S/ Patricia O. Cotter
/S/ Brian Morris