FILED

05/27/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0130

DA 23-0130

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 111

STATE OF MONTANA,

Plaintiff and Appellee,

v.

TOMMY JONATHAN SETH DELLAR,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDC-20-319
Honorable John W. Parker, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Tammy A. Hinderman, Appellate Defender Division Administrator,
Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

Joshua A. Racki, Cascade County Attorney, Matthew S. Robertson, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs: April 9, 2025

Decided: May 27, 2025

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Tommy Jonathan Seth Dellar (Dellar) appeals his conviction for felony intimidation resulting from a jury trial in the Eighth Judicial District Court, Cascade County. We address the following restated issues on appeal:

1. *Whether there was sufficient evidence that Dellar committed felony intimidation.*

2. *Whether disorderly conduct is a lesser-included offense of intimidation.*

3. *Whether Dellar received ineffective assistance when his counsel did not advocate assault as a lesser-included offense.*

4. *Whether the District Court erred by ordering Dellar to pay the victim surcharge without specifically considering Dellar's ability to pay.*

We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2    In May 2020, Dellar was receiving dialysis treatment at DaVita Dialysis when he began expressing symptoms of PTSD. After another patient complained about "noise . . . on the clinic floor," technician Ashley Cray (Cray) asked Dellar to "keep it down." Dellar demanded that Cray end his treatment, stating, "Get me off this machine right now before I pull these f**king needles out." As Cray removed the needles from Dellar's arm, he allegedly stated that he was "about to beat this b**ch's head into the f**king ground." Cray assumed that Dellar directed the statement to her because she was "the one right there." At some point, Cray asked Dellar not to threaten her, stating, "If you continue to threaten me[,] I'm not going to take your needles out. I'm not going to discontinue your treatment."

2

¶3     After the needles were removed, Dellar began yelling generally about how he was "going to shoot [the dialysis center] up" and "come back and kill every one of [the people in the facility]." He stated that it was not a threat but a promise and that they should all be afraid. Law enforcement found Dellar outside the front doors of the center crying uncontrollably. Dellar reiterated to the responding officer that "he was going to f\*\*k the staff up there" and asked to be taken to the hospital.

¶4     Dellar was charged with felony intimidation under § 45-5-203(1)(a), MCA,[1] and a one-day jury trial was held in November 2022. After testimony from Cray, administrative assistant Denice Beecroft, and facility administrator Jessie Harris, Dellar moved for a directed verdict based on insufficient evidence. The District Court denied his motion. Later, while discussing instructions, Dellar requested that disorderly conduct be instructed as a lesser-included offense of the intimidation charge. The District Court also rejected this request, reasoning that an intimidating threat could be made without disturbing the peace, for example, by communicating a threat through a note.

¶5     The jury found Dellar guilty of felony intimidation. At sentencing, Dellar requested that all fees be waived, and the State stipulated to waiver of all except the $50 victim surcharge. In accordance with the stipulation, the District Court imposed only the $50 victim surcharge, explaining,

---

[1] Originally, the State generally alleged "Staff at DaVita Dialysis" as the victim, but later proposed jury instructions that named three specific employees. The final jury instructions ultimately named Cray as the sole victim.

It's a small amount of money to have a person pay in for a future victim of crime, so I think it's sensible. The idea is that an individual is now part of the solution[,] not part of the problem. That agency victim witness responds in the middle of the night when someone's loved one's been killed or raped. They respond to suicide risks that actually don't have anything to do with a criminal justice situation. It's a good place for people to pay in. I think it's part of [Dellar's] rehabilitation and I'm going to have [Dellar] pay that[.] [T]he other [fees] are waived.

Dellar appeals.

## DISCUSSION

¶6    *1. Whether there was sufficient evidence that Dellar committed felony intimidation.*

¶7    Section 45-5-203(1)(a), MCA, provides:

A person commits the offense of intimidation when, with the purpose to cause another to perform or to omit the performance of any act, the person communicates to another, under circumstances that reasonably tend to produce a fear that it will be carried out, a threat to perform without lawful authority . . . inflict[ion] [of] physical harm on the person threatened or any other person.

The issue here turns on whether Dellar's language constituted a threat made with the purpose of causing performance or omission of an act. Cray and two other DaVita employees testified that they could not, in general, recall Dellar's exact statements. Cray did, however, specifically recall Dellar's statement that he would "beat this b**ch's head into the f**king ground," but no additional witnesses testified to that statement. Dellar moved for a directed verdict, asserting that because of the lack of specificity in the alleged statements, the State could not connect Dellar's language to "the purpose to cause another to perform or to omit the performance of any act." The District Court denied Dellar's motion, explaining that it "felt the State had established a prima facie case that there was

4

that link between [Dellar] allegedly trying to get them to take him off dialysis and some very savage, fierce, memorable threats that we've heard multiple times through Ms. Cray."

¶8 We review a district court's denial of a motion to dismiss for insufficient evidence de novo. *State v. Bennett*, 2022 MT 73, ¶ 7, 408 Mont. 209, 507 P.3d 1154. A question on sufficiency of the evidence is reviewed to determine whether "'after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Bennett*, ¶ 7 (quoting *State v. Booth*, 2012 MT 40, ¶ 7, 364 Mont. 190, 272 P.3d 89); § 46-16-403, MCA.

¶9 Having the purpose of causing the performance or omission of an act is a foundational element of intimidation. *See* § 45-5-203(1)(a), MCA. However, a defendant need not explicitly state the conditional nature of their threat where it is clear from the circumstances. *See State v. Motarie*, 2004 MT 285, ¶¶ 7-8, 323 Mont. 304, 100 P.3d 135 (finding intimidation where the defendant called the person who had reported his illegal poaching and threatened their life; the act of cooperating with law enforcement that the defendant intended the victim to omit was clearly inferable from the circumstances). Dellar argues that the assessment of whether he made threats with the purpose of causing another to perform an act is best analogized to *State v. Plenty Hawk*, 285 Mont. 183, 948 P.2d 209 (1997). In *Plenty Hawk*, the defendant was lying intoxicated in the road and was generally belligerent and combatant with responding law enforcement and medical personnel. *Plenty Hawk*, 285 Mont. at 184, 948 P.2d at 209-10. As he was being arrested, Plenty Hawk repeatedly challenged the booking deputy to a fight and declared that "he was going to kick

[the deputy's] ass and terrorize [the deputy] and his family." *Plenty Hawk*, 285 Mont. at 185, 948 P.2d at 210. Plenty Hawk was charged and convicted of intimidation, with the State arguing that Plenty Hawk made threats with the purpose of making the deputy release him. We reversed, holding that Plenty Hawk's statements to the deputies were merely "a continuation of his belligerent attitude" as opposed to threats made with the purpose of causing the deputies to act. *Plenty Hawk*, 285 Mont. at 187, 948 P.2d at 211.

¶10 The key characterization here is whether Dellar's statements were merely part of a generalized belligerent outburst, like *Plenty Hawk*, or whether it could be inferred they were made with the purpose of causing Cray to unhook him from the dialysis machine. And, at the directed verdict stage, the specific question was whether the State had presented sufficient evidence of Dellar's purpose in making the statements such that the ultimate determination could go to the jury. At trial, Dellar's arguments for a directed verdict mainly focused on the fact that Cray and other DaVita employees could not remember Dellar's precise statements. However, Cray testified with specificity to the statement about Dellar beating (what she presumed to be) her head into the ground and the relative timing of that statement to the removal of his dialysis needles. We conclude there was sufficient evidence for the jury to consider whether Dellar had the intended purpose to cause Cray to perform the act of removing him from dialysis when he made his statements.

¶11 *2. Whether disorderly conduct is a lesser-included offense of intimidation.*

¶12 After the close of evidence, Dellar requested that the jury be instructed on disorderly conduct as a lesser-included offense of intimidation. The District Court denied the request,

6

relying on *State v. Denny*, 2021 MT 104, 404 Mont. 116, 485 P.3d 1227, to reason that while the offenses might have overlapping proof, disorderly conduct requires a disturbance of the peace not necessarily present in intimidation. The District Court explained further that if the jury were to find that Dellar merely used profane language that did not constitute a threat, the proper result would be acquittal, as opposed to a finding of disorderly conduct.

¶13 We review a district court's refusal to give a jury instruction on a lesser-included offense for abuse of discretion. *State v. Craft*, 2023 MT 129, ¶ 9, 413 Mont. 1, 532 P.3d 461. Reversible error occurs only if the jury instructions prejudice the defendant's substantial rights; that is, where the evidence could support a jury finding on the lesser-included offense. *Craft*, ¶ 9 (quoting *State v. Freiburg*, 2018 MT 145, ¶ 10, 391 Mont. 502, 419 P.3d 1234). A defendant is entitled to an instruction on the lesser-included offense where, based on the evidence, the jury could find the defendant guilty of the lesser, rather than the greater, offense. *Denny*, ¶ 27 (citing *State v. Matinosky*, 1999 MT 122, ¶ 18, 294 Mont. 427, 982 P.2d 440).

¶14 A district court must first determine whether the proposed offense is a lesser-included offense as a matter of law. *Denny*, ¶ 27. "A lesser-included offense is defined in part as an offense that 'is established by proof of the same or less than all the facts required to establish the commission of the offense charged.'" *State v. Daniels*, 2017 MT 163, ¶ 14, 388 Mont. 89, 397 P.3d 460 (quoting § 46-1-202(9)(a), MCA). "Facts" as referenced in § 46-1-202(9)(a), MCA, refers to the elements of the offenses, not the individual facts of the case. *Daniels*, ¶ 14 (quoting *State v. Jay*, 2013 MT 79, ¶ 40, 369

7

Mont. 332, 298 P.3d 396). If the district court determines that it is a true lesser-included offense, it must determine whether the lesser-included offense is supported by sufficient evidence. *Denny*, ¶ 27 (citing *Jay*, ¶ 39). A lesser-included offense is not supported by evidence "when the evidence, if believed, would require an acquittal on both the greater and lesser offense." *Craft*, ¶ 15 (citations omitted).

¶15 Dellar's argument is, fundamentally, that one cannot make the kind of threat sufficient to support intimidation without also having disturbed the peace of at least the victim. We begin with the statutory elements of each offense. A person commits intimidation if they (1) communicate a threat to inflict physical harm without lawful authority; (2) with the purpose to cause another to perform or omit the performance of any act; (3) under circumstances reasonably tending to produce fear that the threat will be carried out. Section 45-5-203(1)(a), MCA. A person commits disorderly conduct if they (1) knowingly disturb the peace of another by, *inter alia*, (2) using threatening, profane, or abusive language. Section 45-8-101(1)(c), MCA.

¶16 We agree with the District Court that the "fact" of disturbing the peace necessary to finding disorderly conduct is distinct. It is true that threatening language is an element of both offenses. But, as the District Court opined, one may successfully convey the action-inducing language of a threat without necessarily disturbing the peace. When we analyze under the law whether disorderly conduct is a lesser-included offense of intimidation, each offense requires proof of at least one element the other does not. Intimidation requires the State show the defendant made a threat "with the purpose to cause

8

another to perform or omit the performance of any act." Regarding disorderly conduct, the State must show the defendant made threatening language which disturbed the peace. The element of disturbing the peace is not included in intimidation. Additionally, intimidation requires the defendant communicate a threat of "physical harm." Disorderly conduct does not require a threat of physical harm.

¶17 Though we have not previously analyzed this particular set of offenses, we concluded in *State v. Fehringer*, 2013 MT 10, 368 Mont. 226, 293 P.3d 853, that disorderly conduct did not, as a matter of law, constitute a lesser-included offense of partner or family member assault. We noted the disorderly conduct statute lists a number of actions that can constitute disturbing the peace, including quarreling or fighting, making loud noises, or discharging firearms. *Fehringer*, ¶ 33. However, for any of these situations to constitute disorderly conduct they must disturb the peace. Because a defendant may be convicted of partner or family member assault without any evidence that he disturbed the peace, we concluded disorderly conduct was not a lesser-included offense of partner or family member assault. *Fehringer*, ¶¶ 33-34. Following that reasoning here, disorderly conduct is not a lesser-included offense of intimidation as a matter of law, and the District Court did not abuse its discretion in refusing to instruct as such. As disorderly conduct is not legally a lesser-included offense of intimidation, it is not necessary to reach the second step of whether Dellar's evidence was sufficient for the District Court to instruct the jury on disorderly conduct.

¶18 *3. Whether Dellar received ineffective assistance when his counsel did not advocate assault as a lesser-included offense.*

¶19 On appeal, Dellar argues that he received ineffective assistance because trial counsel failed to advocate for the "most obvious" lesser-included offense of misdemeanor assault. We consider only record-based ineffective assistance claims on direct appeal. *State v. Ugalde*, 2013 MT 308, ¶ 28, 372 Mont. 234, 311 P.3d 772 (citations omitted). To the extent that such claims are reviewable, they present mixed questions of law and fact that we review de novo. *Ugalde*, ¶ 28 (quoting *State v. Aker*, 2013 MT 253, ¶ 22, 371 Mont. 491, 310 P.3d 506) (additional citations omitted).

¶20 In addressing ineffective assistance claims, we look at the record to determine whether we can ascertain *why* counsel did or did not perform as alleged. *State v. Kougl*, 2004 MT 243, ¶ 14, 323 Mont. 6, 97 P.3d 1095. Given the lack of argument, it is not possible to glean from the record why Dellar's counsel did not argue for assault as a lesser-included offense. However, in certain situations "it is unnecessary to ask 'why' in the first instance," for example, in "the relatively rare situation where there is 'no plausible justification' for what defense counsel did." *Kougl*, ¶ 15 (quoting *State v. Jefferson*, 2003 MT 90, ¶ 50, 315 Mont. 146, 69 P.3d 641). Dellar asserts that this is such a situation. The State contends, on the other hand, that there is an obvious plausible justification—defense counsel knew, as a matter of law, that assault is not a lesser-included offense of intimidation.

10

¶21    We agree that assault is not a lesser-included offense of intimidation. The question again is whether the elements of assault are the same or less than the elements required of intimidation. Assault requires that a person "purposely or knowingly causes reasonable apprehension of bodily injury in another," among other possible acts. Section 45-5-201(1)(d), MCA. Dellar argues that because intimidation requires communicating a threat to inflict physical harm under circumstances reasonably tending to produce fear that the threat will be carried out, § 45-5-203(1)(a), MCA, it necessarily entails causing a reasonable apprehension of bodily injury.

¶22    Critically, assault has the element of causing reasonable apprehension of bodily injury, which is defined as "physical pain, illness, or an impairment of physical condition and includes mental illness or impairment." Section 45-2-101(5), MCA. Intimidation requires "physical harm" which would not include mental health or impairment. Thus, assault may be committed by inflicting harm to a person's mental health, a harm not included in intimidation. Further, intimidation requires the additional "fact" that a threat be communicated with the specific purpose of causing someone else to commit or omit some act. Assault requires no additional motive or result beyond causing a reasonable apprehension of bodily injury. But assault requires the additional "fact" that "reasonable apprehension must be experienced by 'the intended victim of the serious bodily injury' and 'not a third party who was merely fearful that the intended victim would be harmed.'" *State v. Rodriguez*, 2024 MT 132, ¶ 22, 417 Mont. 52, 551 P.3d 292 (quoting *State v. Smith*, 2004 MT 191, ¶ 29, 322 Mont. 206, 95 P.3d 137). Assault requires proof that the victim

of the intended bodily harm be the one to reasonably apprehend the impending harm, but intimidation does not require the intended victim of the harm apprehend the risk—one could threaten another's family or an occupied public building, for example, and commit intimidation without committing assault. Each requires proof of at least one "fact" the other does not, and assault is therefore not a lesser-included offense of intimidation. *See Denny*, ¶ 34. Thus, Dellar's counsel's decision not to request assault as a lesser-included offense is justifiable, and we cannot otherwise ascertain why they made this decision. Dellar's ineffective assistance claim is not record-based and not suitable for review on direct appeal.

¶23 *4. Whether the District Court erred by ordering Dellar to pay the $50 victim surcharge without specifically considering Dellar's ability to pay.*

¶24 We review a district court's determination of a defendant's ability to pay an imposed fine, fee, cost, or other charge for clear error. *State v. Dowd*, 2023 MT 170, ¶ 7, 413 Mont. 245, 535 P.3d 645.

¶25 "[A] sentencing court is authorized to order a fine or cost only if the offender has the ability to pay and only after the sentencing judge considers the nature of the offense, the financial resources of the offender, and the nature of the burden the fine will impose." *State v. Gibbons*, 2024 MT 63, ¶ 47, 416 Mont. 1, 545 P.3d 686. Dellar argues that the District Court erred by not specifically considering his ability to pay, and the State concedes the issue. We disagree and conclude that the District Court did consider Dellar's ability to pay in its acceptance of the parties' stipulation and imposition of the $50 fee.

¶26 The colloquy between the court, State, and Dellar's counsel at sentencing provides:

DEFENSE COUNSEL: Your Honor, there are some fees probably mentioned. And I'll just say any fees for me, for the Department, for the PSI will be a very big hardship on [Dellar] and his immediate family. And for that reason we're asking that you waive those fees or as many as that you can. Thank you.

THE COURT: Well, thank you, [counsel].

STATE: Your Honor, for the record, the fees are contained in the probation conditions in Paragraph 12 which is on pages 6 and 7—

THE COURT: —right—

STATE: —of the pre-sentence investigation. The State does not object to waiving the Probation and Parole Officer 50 dollar monthly fee in subsection (a), the surcharge in subsection (b). We would ask the Court to impose the surcharge for victim and witness advocate programs of 50 dollars under subsection (c). We do not have any issues with the Court or waiving sections (d), (e), (f), and (g) of condition 12.

THE COURT: Well by stipulation those will be waived and that's what I was going to do but the stipulation that is important. So all of those are waived except for 12(c). And we'll just have that conversation now[;] it's a victim witness surcharge. It's called restorative justice. It's a small amount of money to have a person pay in for a future victim of crime, so I think it's sensible. The idea is that an individual is now part of the solution not part of the problem. That agency victim witness responds in the middle of the night when someone's loved one's been killed or raped. They respond to suicide risks that actually don't have anything to do with a criminal justice situation. It's a good place for people to pay in. I think it's part of your rehabilitation and I'm going to have you pay that[.] [T]he other ones are waived.

¶27 Based on the record, the District Court determined that the parties had stipulated to the waiver of fees. The District Court considered the parties' stipulation and the basis for the stipulation—Dellar's ability to pay—but concluded that Dellar should nonetheless pay the victim surcharge fee of $50. The District Court determined that the fee was a small amount for Dellar to pay in relation to principles of restorative justice. We conclude the

13

District Court, although aware of Dellar's financial situation, found that the fee was nominal and that Dellar had the ability to pay the small amount in the interests of restorative justice. Here, the record does not support that the court failed to consider Dellar's ability to pay; rather, the District Court considered the parties' stipulation as to other fees but determined that the victim surcharge fee was nominal and that Dellar could pay it.

## CONCLUSION

¶28 There was sufficient evidence for the jury to conclude Dellar was guilty of intimidation. Disorderly conduct and assault are not lesser included offenses of intimidation. Dellar's ineffective assistance claim is not record-based and not suitable for review on direct appeal. Finally, we cannot conclude on this record that the District Court failed to consider Dellar's ability to pay the $50 victim surcharge.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ INGRID GUSTAFSON
/S/ JIM RICE