No.  97-305

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

v.

RODNEY PLENTY
HAWK,

Defendant and Appellant.



APPEAL FROM:        District Court of the Thirteenth Judicial District,
                    In and for the County of Big Horn,
             The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James L. Vogel, Hardin, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Patricia J. Jordan, Assistant
Attorney General, Helena, Montana; Christine A. Cooke, Big Horn County
Attorney, Curtis Bevolden, Deputy Big Horn County Attorney, Hardin,
Montana




Submitted on Briefs: October 16, 1997

Decided:     October 22, 1997
Filed:


_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Rodney Plenty Hawk appeals a jury verdict in the District Court for the Thirteenth
Judicial District, Big Horn County, convicting him of Intimidation.  We reverse.
The issues presented for review are:
1.  Whether there was sufficient evidence to support the verdict.
2.  Whether Plenty Hawk's right to a speedy trial was violated.
Because we reverse on issue one regarding the sufficiency of the evidence, we decline to
address issue two.

Factual and Procedural Background

On February 8, 1996, at approximately 9 p.m., Deputy Bob Runge of the Big Horn County Sheriff's Department was dispatched to investigate a report of an intoxicated person lying in the road.  Upon arriving at the scene, Runge discovered Plenty Hawk lying in the parking lane.  Runge noticed that Plenty Hawk had blood coming down over one eye.  Fearing that Plenty Hawk may have been hit by a car, Runge called for an ambulance.  When the ambulance personnel arrived and began examining Plenty Hawk, he sat up and tried to push them away.  Sue Mercier and Patti Medicinehorse, the ambulance personnel, testified that Plenty Hawk smelled of alcohol and that, although he seemed alert and oriented, he was combative and belligerent.  Mercier and Medicinehorse determined that Plenty Hawk's vital signs were normal and that he had not sustained any life-threatening injuries.  Because Plenty Hawk was covered with mud, they decided to transport him to the sheriff's office where they could clean him up and examine him more thoroughly.  Runge placed Plenty Hawk in the back of his patrol car while assuring Plenty Hawk that he was not under arrest.

At the sheriff's office, Plenty Hawk was placed in a holding cell.  He was combative and insisted that everyone leave him alone.  When Mercier attempted to check his pulse, Plenty Hawk took a swing at her.  Mercier then left the cell and Medicinehorse calmed Plenty Hawk down, completed the medical exam and cleaned the abrasion over Plenty Hawk's eye.

As Medicinehorse was leaving, Runge advised Plenty Hawk that he was under arrest for the charge of Intoxicated Pedestrian and that he would be spending the night in jail.  Pete Molina, the detention officer, began the booking process and directed Plenty Hawk to take off his shoes.  After taking off one shoe, Plenty Hawk refused to take off his other shoe and twice challenged Runge to fight.  Plenty Hawk stood 6 feet 3 inches tall, weighed 240 pounds and was 35 to 40 years old, while Runge stood 5 feet 11 inches tall, weighed 180 pounds and was 56 years old.

Both Runge and Molina testified that Plenty Hawk declared that as soon as he got out of jail he was going to kick Runge's ass and terrorize Runge and his family.

Molina
reported that the entire exchange with Plenty Hawk lasted only 15 to 20 minutes and that
Plenty Hawk apologized to Molina the next day. Runge acknowledged at trial that he had
been told by one of the jailers that Plenty Hawk wished to apologize to Runge as well.

At trial, Plenty Hawk recounted that he was in Hardin to make a dental appointment. While waiting for his ride back to the Crow Agency, he stopped in one of the local casinos to gamble. After winning $150, he visited a few bars and spent several hours drinking. At some point he decided to hitchhike home. He recalled standing on the side of the road in the rain, but did not recall anything else until he woke up in a cell at the jail. He contended that because of his intoxicated condition he must have blacked out and that he did not remember Runge or the ambulance crew coming to the scene or having made any threats to Runge.

Plenty Hawk was charged with Intimidation pursuant to õ 45-5-203, MCA (1995). He was tried by a jury on September 6, 1996. At the close of the State's case-in-chief, defense counsel moved for a directed verdict alleging insufficient evidence. The District Court denied the motion and Plenty Hawk was subsequently found guilty and sentenced to three years at Montana State Prison. On March 5, 1997, defense counsel filed a motion for a new trial or a judgment notwithstanding the verdict. A hearing on the motion was conducted on April 7, 1997. By order dated April 18, 1997, the court denied Plenty Hawk's motion as untimely. Plenty Hawk now appeals his conviction.

## Discussion

Whether there was sufficient evidence to support the verdict.

The standard of review of the sufficiency of the evidence to sustain a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Ross (1995), 269 Mont. 347, 360, 889 P.2d 161, 169 (citing State v. Arlington (1994), 265 Mont. 127, 146, 875 P.2d 307, 318). This is the same standard that applies to a district court's decision on a motion for a directed verdict. State v. Treible (1996), 275 Mont. 59, 61, 910 P.2d 237, 238.

Plenty Hawk was convicted of Intimidation under õ 45-5-203, MCA (1995), which provides, in pertinent part:

Intimidation. (1) A person commits the offense of intimidation when, with the purpose to cause another to perform or to omit the performance of any act, he communicates to another, under circumstances which reasonably tend to produce a fear that it will be carried out, a threat to perform without lawful authority any of the following acts:

(a) inflict physical harm on the person threatened or any other

person;
(b) subject any person to physical confinement or restraint; or
(c) commit any felony.

Plenty Hawk contends that his conviction should be reversed because the State failed to present any evidence on one of the essential elements of the crime, namely whether the threats were made "with the purpose to cause another to perform or to omit the performance of any act."

The State contends that at the time the threats were made, Runge was placing Plenty Hawk under arrest and that Plenty Hawk's purpose in making the threats was to cause Runge to release him. However, there is no evidence in the record that the threats were made for any particular purpose. Plenty Hawk was belligerent and uncooperative from the time Runge found him. He tried to push the ambulance attendants away when they attempted to examine him while he was lying in the roadway. At the jail, prior to being informed he was under arrest, Plenty Hawk took a swing at one of the ambulance attendants. There is nothing in the record to indicate that Plenty Hawk's threats to Runge were anything other than a continuation of his belligerent attitude.

The Criminal Law Commission Comments to õ 45-5-203, MCA, provide that "[i]ntimidation requires a specific purpose to cause another to perform 'or to omit' the performance of any act . . . and the threat must be 'communicated' with that purpose."

As Plenty Hawk points out, there was no purpose in the threats made to Runge; Plenty Hawk was simply drunk and belligerent. At no time did Plenty Hawk state what act he might want Runge to do or to omit and the State has provided no evidence to show what specific act Plenty Hawk was seeking to have done or omitted.

Accordingly, we hold that the evidence is insufficient to support a guilty verdict on the charge of Intimidation. The District Court erred in denying Plenty Hawk's motion for a directed verdict.

Reversed with instructions that the District Court enter an order granting Plenty Hawk's motion for a directed verdict and vacating his conviction and sentence for Intimidation.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE
/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ W. WILLIAM LEAPHART