No. 04-153

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 285

STATE OF MONTANA,

Plaintiff and Respondent,

v.

GARY MOTARIE,

Defendant and Appellant.

APPEAL FROM: The District Court of the Ninth Judicial District,
In and for the County of Glacier, Cause No. DC 2003-4,
Honorable Marc G. Buyske, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Terryl T. Matt, Attorney at Law, Cut Bank, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Carol E. Schmidt,
Assistant Attorney General, Helena, Montana

Larry D. Epstein, County Attorney, Cut Bank, Montana

Submitted on Briefs: September 21, 2004

Decided: October 19, 2004

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Gary Motarie appeals the District Court's denial of his motion for a directed verdict. Motarie argues that the State failed to prove an element necessary for finding him guilty of intimidation and tampering with witnesses. Sections 45-7-206 and 45-5-203, MCA (2001). We affirm.

## BACKGROUND

¶2 Phil Iverson reported Motarie to the Turn in Poachers, or T.I.P. program, for allegedly poaching an elk on the Sun River Game Range–where hunting elk is illegal. The Department of Fish, Wildlife and Parks established the T.I.P. program to give recreationists an easy way to report violations of fish, wildlife, or parks violations. Through the Cut Bank grapevine, Motarie learned that Iverson had reported Motarie to the Department of Fish, Wildlife and Parks.

¶3 Within one month after accusing Motarie, Iverson received a phone call from a person who did not identify himself, but whose voice Iverson recognized as Motarie's. Motarie told Iverson, "You're a dead mother fucker, [sic] you'll never live to see your next birthday." Motarie called again the next day, but said nothing. The jury found Motarie guilty of both intimidation under § 45-5-203, MCA (2001), and tampering with a witness under, § 45-7-206, MCA (2001).

## STANDARD OF REVIEW

¶4 We review a district court's decision to deny a criminal defendant's motion for a directed verdict to determine if the district court abused its discretion. *State v. Dahlin*, 2004

MT 19, ¶ 8, 319 Mont. 303, ¶ 8, 84 P.3d 35, ¶ 8. If, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we will conclude the district court did not abuse its discretion. *State v. Dahlin*, ¶ 8.

## DISCUSSION

¶5     The intimidation statute provides, in relevant part:

> **Intimidation**. (1) A person commits the offense of intimidation when, *with the purpose to cause another to perform or to omit the performance of any act*, he communicates to another, under circumstances which reasonably tend to produce a fear that it will be carried out, a threat to perform without lawful authority any of the following acts:
> (a)  inflict physical harm on the person threatened or any other person;
> (b)  subject any person to physical confinement or restraint; or
> (c)  commit any felony.

Section 45-5-203(1), MCA (2001) (emphasis added). The tampering with witnesses and informants statute provides as follows:

> **Tampering with witnesses and informants**. (1) A person commits the offense of tampering with witnesses and informants if, believing that an official proceeding or investigation is pending or about to be instituted, he *purposely or knowingly attempts to induce or otherwise cause a witness* or informant to:
> (a)  testify or inform falsely;
> (b)  withhold any testimony, information, document, or thing;
> (c)  elude legal process summoning him to testify or supply evidence; or
> (d)  absent himself from any proceeding or investigation to which he has been summoned.

Section 45-7-206(1), MCA (2001) (emphasis added). Citing *State v. Plenty Hawk* (1997), 285 Mont. 183, 948 P.2d 209, Motarie claims that the prosecution failed to prove that he acted with any purpose.

3

¶6      Plenty Hawk was behind bars when he told the deputy he was going to "kick [the deputy's] ass and terrorize [him] and his family." *Plenty Hawk*, 285 Mont. at 185, 948 P.2d at 210. By threatening the deputy with violence once released from his cell, Plenty Hawk would have made the deputy even more disposed to leaving Plenty Hawk in the cell. We concluded that the record lacked any evidence that the threats "were made for any particular purpose." *Plenty Hawk*, 285 Mont. at 186, 948 P.2d at 211. Instead, the record showed nothing "to indicate that Plenty Hawk's threats to [the deputy] were anything other than a continuation of his belligerent attitude." *Plenty Hawk*, 285 Mont. at 186-87, 948 P.2d at 211.

¶7      Motarie asserts that, as in *Plenty Hawk*, the State failed to show his purpose in making his threats. Plenty Hawk was simply drunk and belligerent, but in the case *sub judice*, the record speaks of a more invidious purpose. Iverson was the central witness to the State's poaching case against Motarie. It could certainly be inferred that Motarie could have intended that his threats stop Iverson from cooperating with law enforcement.

¶8      "[C]riminal intent, being a state of mind, is rarely susceptible of direct or positive proof and therefore must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence." *State v. Longstreth,* 1999 MT 204, ¶ 34, 295 Mont. 457, ¶ 34, 984 P.2d 157, ¶ 34 (quotation omitted). Seen in the light most favorable to the prosecution, a reasonable jury could have determined that Motarie intended to stop Iverson from continuing his cooperation in Motarie's prosecution and, thus, he had the requisite purpose for both the intimidation statute and the tampering with witnesses and informants statute. We affirm the District Court.

/S/ W. WILLIAM LEAPHART


We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JIM RICE