DA 11-0352

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 227

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

CURTIS RANDALL MITCHELL,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-32-2010-0000388-IN
Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Wade M. Zolynski, Chief Appellate Defender, Lisa S. Korchinski,
Assistant Appellate Defender, Helena, Montana

       For Appellee:

           Steve Bullock, Montana Attorney General; Tammy Hinderman,
Assistant Attorney General, Helena, Montana

           Fred Van Valkenburg, Missoula County Attorney; Shawn Thomas,
Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  April 18, 2012

Decided:  October 9, 2012

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Appellant Curtis Randall Mitchell (Mitchell) appeals from his conviction in the Fourth Judicial District Court, Missoula County, of one count of felony aggravated assault in violation of § 45-5-202, MCA. Mitchell argues that his conviction should be reversed under the plain error doctrine because law enforcement failed to investigate his claim of justifiable use of force as required by § 45-3-112, MCA. He also argues that he received ineffective assistance of counsel because his attorney failed to move for dismissal of his charge. We consider the following issues on appeal:

¶2 *Issue one: whether law enforcement's alleged failure to investigate Mitchell's claim of justifiable use of force pursuant to § 45-3-112, MCA, warrants reversal upon plain error review.*

¶3 *Issue two: whether Mitchell received ineffective assistance of counsel when his trial counsel failed to move for dismissal based upon law enforcement's alleged failure to investigate his claim of self-defense.*

BACKGROUND

¶4 On August 15, 2010, a witness called 911 to report a fight between two men near the 316 Mission in Missoula. The witness explained that one of the men was being "choked out" by the other man. When law enforcement arrived, they observed Mitchell continuing to choke another man. The officers identified the man being held in a sleeper hold as Mark Corbin.

¶5     Mitchell explained to law enforcement that prior to the fight, Corbin had harassed him and told him he should kill himself, so Mitchell decided to accost Corbin. In the ensuing fight, Mitchell quickly gained the advantage and told Corbin that he would let him up if he quit fighting. However, when Corbin was released, he reached behind himself for a multi-tool on his belt. Mitchell charged Corbin, resumed strangling him, and yelled to the witness that Corbin had a knife.

¶6     While initially calm, Mitchell soon became agitated and had to be handcuffed so that the initial investigation could proceed. He told the officers that Corbin had tried to pull a knife on him. The officers did not see a knife in the open, but did observe a closed multi-tool in a case on Corbin's belt. They questioned Corbin about the tool and whether he had removed it from its case during the fight. Corbin admitted to reaching for his multi-tool to "bluff" Mitchell, but denied that he had ever removed the tool from its pouch.

¶7     The police did not confiscate it as evidence. Upon interviewing both parties and the witness, the officers determined that Mitchell had been the aggressor and that probable cause existed to charge him with aggravated assault.

¶8     Mitchell relied on the defense of justifiable use of force at trial, but did not testify on his own behalf. His attorney argued that Corbin had been the aggressor because Mitchell had withdrawn from the fight, only to resume when Corbin reached for his multi-tool. She suggested that Corbin was also the aggressor because he had a bicycle with which he could have withdrawn from the fight. She argued that police failed to properly investigate the fight based upon the failure to collect the multi-tool. In closing

3

argument, she specifically argued, "The officers didn't confiscate it. They didn't take any pictures of it, but there's evidence of it." She did not file a motion to dismiss.

¶9 Three officers, Corbin, and the eye-witness testified at trial. The eye-witness testified that Mitchell told him that Corbin had a knife, but he never saw one himself. One officer testified that she did not inspect the multi-tool, but that she was familiar with such tools because she owned one herself. She testified that they display a pair of pliers when initially opened, but a small blade can also be drawn. She testified that she did not seize the tool because it had been secured and was not a threat in her opinion. Another officer testified that he was aware that Corbin had a multi-tool in a pouch in his pocket. The jury convicted Mitchell, and he was sentenced to Montana State Prison for 20 years with 10 years suspended. He now appeals from his conviction.

STANDARDS OF REVIEW

¶10 The interpretation and construction of a statute is a matter of law; thus, we review de novo whether the district court interpreted and applied the statute correctly. *State v. West*, 2008 MT 338, ¶ 13, 346 Mont. 244, 194 P.3d 683. We invoke plain error review sparingly, on a case-by-case basis, according to narrow circumstances, and by considering the totality of the case's circumstances. *State v. Lindberg*, 2008 MT 389, ¶ 34, 347 Mont. 76, 196 P.3d 1252. "[A] mere assertion that constitutional rights are implicated or that failure to review the claimed error may result in a manifest miscarriage of justice is insufficient to implicate the plain error doctrine." *State v. Gunderson*, 2010 MT 166, ¶ 100, 357 Mont. 142, 237 P.3d 74.

4

¶11 Ineffective assistance of counsel claims consist of mixed questions of law and fact that we review de novo. *Gunderson*, ¶ 66.

ANALYSIS

¶12 *Issue one: whether law enforcement's alleged failure to investigate Mitchell's claim of justifiable use of force pursuant to § 45-3-112, MCA, warrants reversal upon plain error review.*

¶13 Under the plain error doctrine, we discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if a timely objection was not made in the trial court. *West*, ¶ 23. Section 46-20-701(2), MCA, often referred to as the statutory plain error rule, requires the appellant to establish that an error effecting constitutional rights, that was not objected to at trial, was prejudicial to the defendant's guilt or punishment. *See State v. Ellison*, 2012 MT 50, ¶¶ 17-20, 364 Mont. 276, 272 P.3d 646. Here, Mitchell does not raise plain error under the statute, but rather asks the Court to invoke common law plain error review—a doctrine adopted by this Court in *State v. Finley*, 276 Mont. 126, 915 P.2d 208 (1996), *overruled in part on other grounds*, *State v. Gallagher*, 2001 MT 39, 304 Mont. 215, 19 P.3d 817. However, even under the common law standard:

> [S]imply requesting that we exercise plain error review is not sufficient. In order to obtain review of an unpreserved issue under this doctrine, the appealing party must (1) show that the claimed error implicates a fundamental right and (2) "firmly convince" this Court that failure to review the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process.

*State v. Norman*, 2010 MT 253, ¶ 17, 358 Mont. 252, 244 P.3d 737.

¶14 Mitchell asserts that law enforcement failed to properly investigate his claim of justifiable use of force. He argues that his due process rights were violated because officers "failed to conduct such an investigation that disclosed all evidence; evidence that supported Mitchell's apparent and alleged justifiable use of force." He claims that the officers had an affirmative duty to collect the multi-tool pursuant to § 45-3-112, MCA. The State argues that law enforcement did not fail to disclose exculpatory evidence in its control, and that any failure to inspect, confiscate, or photograph the multi-tool does not rise to the level of a constitutional violation.

¶15 Section 45-3-112, MCA, upon which Mitchell bases his claim, was first enacted by the 2009 Legislature. The statute reads:

> When an investigation is conducted by a peace officer of an incident that appears to have or is alleged to have involved justifiable use of force, the investigation must be conducted so as to disclose all evidence, including testimony concerning the alleged offense and that might support the apparent or alleged justifiable use of force.

Section 45-3-112, MCA.

¶16 A recently decided case, *State v. Cooksey*, 2012 MT 226, ___ Mont. ___, ___ P.3d ___, held that the district court had correctly applied the law when it found that § 45-3-112, MCA, did not impose any new and independent duty for law enforcement to investigate cases involving justifiable use of force. Instead, the statute reflects long-established obligations regarding thorough and complete police investigations and requirements that the prosecution disclose any evidence in the government's possession

6

that is relevant to the defense of justifiable use of force. *Cooksey*, ¶¶ 34-35. In Mitchell's case, the prosecution complied with these obligations.

¶17 Mitchell's defense was that he had "a real and imminent fear he was going to be attacked with a knife." Mitchell alleged that Corbin reached for a potential weapon in a leather pouch on his belt. This was disclosed at trial multiple times, and was readily established without the physical evidence. The eye-witness testified during cross-examination that Mitchell told him that Corbin had a knife, but that he had not seen one. He also testified that Mitchell had yelled to him to call the police, and that he told the dispatcher on the subsequent call that Mitchell was yelling that the other guy pulled a knife on him. The police officer who first responded to the incident testified on cross-examination that Mitchell told him he had resumed his sleeper hold on Corbin only after he saw him reach for a knife. He testified that Corbin had the multi-tool on him, and that the tool contained a knife. He also acknowledged that as an officer, he had a duty to investigate any possible self-defense claims. Likewise, another responding officer testified that Corbin informed her that he had a multi-tool on him during the confrontation, which included a blade among its many features. She recognized that it could be used as a weapon, but did not confiscate the tool because it was secured and her investigation did not indicate that it had been involved in the confrontation. The detective who investigated the incident also testified that Corbin admitted to her that he had reached for the multi-tool to "bluff" Mitchell into thinking he was going to pull a knife. Finally, the jury was instructed on justifiable use of force, and was also given an instruction mirroring the language of § 45-3-112, MCA,

7

¶18 In light of our decision in *Cooksey* and the facts of the instant case, we conclude that Mitchell has failed to demonstrate why plain error review of this issue should be exercised. We invoke the plain error doctrine sparingly, and only where failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process. *Norman*, ¶ 17. We conclude Mitchell has not met this threshold.

¶19 *Issue two: whether Mitchell received ineffective assistance of counsel when his trial counsel failed to move for dismissal based upon law enforcement's alleged failure to investigate his claim of self-defense.*

¶20 Mitchell asserts his counsel was ineffective for failing to move for dismissal of the information charging him based upon law enforcement's alleged failure to investigate his claim, again citing § 45-3-112, MCA.

¶21 The Sixth Amendment of the United States Constitution and Article II, § 24, of the Montana Constitution guarantee the right to effective assistance of counsel. We analyze IAC claims under the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). A defendant alleging IAC must prove (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defense. *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861. Both prongs of this test must be satisfied in order to prevail on an ineffective assistance of counsel claim; thus, an insufficient showing on one prong negates the need to address the other. *Whitlow*, ¶ 11. The reviewing court must further

8

"'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Whitlow*, ¶ 15 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065).

¶22 The second prong of the *Strickland* test requires that Mitchell demonstrate the existence of a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceedings would have been different. *State v. Jefferson*, 2003 MT 90, ¶ 53, 315 Mont. 146, 69 P.3d 641 (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). This inquiry focuses on whether counsel's deficient performance renders the trial result unreliable or the proceeding fundamentally unfair. *Jefferson*, ¶ 53 (citing *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069).

¶23 As we noted above, § 45-3-112, MCA, imposed no additional duty on law enforcement or the prosecution beyond what was performed in this case. Mitchell's defense was predicated on the fact that he had an imminent fear that Corbin was going to draw a knife from the pouch on his belt. This fact was never disputed by the prosecution or by law enforcement witnesses as Mitchell presented a vigorous justifiable use of force defense. Clearly, the better practice would have been for the police to have collected the tool as evidence. However, Mitchell has made no demonstration that, under the circumstances, the failure to collect the multi-tool as evidence constituted an error that implicated his fundamental constitutional rights. Therefore, a motion for dismissal by trial counsel would have been unlikely to succeed. *See Cooksey*, ¶ 36. Mitchell has failed to demonstrate that the result of the proceedings would have been different had the motion been filed, and has thus failed to establish ineffective assistance of counsel.

9

¶24 Because he has made an insufficient showing on the prejudice prong of the *Strickland* test, further analysis is unnecessary. *Whitlow*, ¶ 11.

CONCLUSION

¶25 Based on the foregoing, we affirm the judgment of the District Court, and dismiss Mitchell's ineffective assistance of counsel claim with prejudice. Mitchell has failed to establish that any alleged failure of law enforcement officials to comply with § 45-3-112, MCA, prejudiced his defense requiring this Court to exercise plain error review, nor has he established that his counsel's representation was ineffective.

/S/ MIKE McGRATH

We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ BRIAN MORRIS

Justice James C. Nelson, dissenting.

¶26 I dissent. The Court's analysis of both issues is ultimately grounded in its interpretation of § 45-3-112, MCA, as recently set out in *State v. Cooksey*, 2012 MT 226, ¶¶ 34-38, ___ Mont. ___, ___ P.3d ___. I disagree with that interpretation, and thus the Court's resolution of the instant appeal, for the reasons stated in my *Cooksey* dissent. *See Cooksey*, ¶¶ 50-52, 63-104 (Nelson, J., concurring in part and dissenting in part).

/S/ JAMES C. NELSON

Justice Jim Rice joins in the Dissent of Justice James C. Nelson.

/S/ JIM RICE

10