FILED

10/04/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0127

DA 15-0127

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 243

STATE OF MONTANA,

       Plaintiff and Appellee,

   v.

GALE SPOTTEDBEAR,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADC 14-096
Honorable Gregory G. Pinski, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

         Chad Wright, Chief Appellate Defender, Alexander H. Pyle, Assistant
Appellate Defender, Helena, Montana

     For Appellee:

         Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
Assistant Attorney General, Helena, Montana

         John W. Parker, Cascade County Attorney, Amanda L. Lofink, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs:  August 3, 2016

Decided:  October 4, 2016

Filed:

                                                                                           Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Great Falls Police Officer Mike Walker arrested Gale Spottedbear for disorderly conduct following a disturbance at Wal-Mart.  Spottedbear threatened to kill Officer Walker and his family after Officer Walker told him that he was also being charged with criminal trespass—a more serious offense.  The State charged Spottedbear with threats and other improper influence in official matters, criminal trespass, and disorderly conduct, and a jury convicted him on all three counts.  Spottedbear challenges his conviction on the following grounds:  (1) the improper influence statute is unconstitutionally overbroad—a claim Spottedbear raises for the first time on appeal; (2) the evidence was insufficient to convict him on either the improper influence or criminal trespass charge; (3) the court should not have admitted evidence regarding a prior incident with Officer Walker; and (4) his trial counsel was ineffective for failing to raise the constitutional challenge and for failing to object to the jury instructions on mental state.

¶2     We affirm the improper influence conviction and reverse the conviction for criminal trespass.

### PROCEDURAL AND FACTUAL BACKGROUND

¶3     In late February 2014, Officer Walker responded to a disturbance between Spottedbear and another customer at a Wal-Mart store in Great Falls, Montana.  After speaking to Janet Sherod, a Wal-Mart staff member, about the situation, Officer Walker told Spottedbear to leave the store.  On his way out, Spottedbear yelled at Sherod, and Officer Walker arrested him for disorderly conduct.

¶4  On the way to the detention center, Officer Walker informed Spottedbear that he was going to charge him with criminal trespass in addition to disorderly conduct. Spottedbear—who was intoxicated—became more agitated and brought up a previous incident in which he threatened and assaulted Officer Walker. Spottedbear grew increasingly belligerent and yelled that he had seen Officer Walker and his wife out in public since that incident. Spottedbear then repeatedly threatened to kill Officer Walker, his pregnant wife, and his family.

¶5  Based on Spottedbear's threats, the State added a charge of improper influence to the disorderly conduct and criminal trespass charges. Prior to trial, Spottedbear moved to limit the State's introduction of evidence regarding the previous incident he had with Officer Walker. The District Court ruled that the State could elicit testimony about the prior incident but that it could not bring up that Spottedbear had been convicted of any crime.

¶6  Officer Walker was the only witness at trial. The jury found Spottedbear guilty on all three charges. The District Court sentenced Spottedbear as a persistent felony offender to ten years for the improper influence conviction, six months for the criminal trespass conviction, and ten days for the disorderly conduct conviction, to run concurrently. Spottedbear appeals.

## STANDARDS OF REVIEW

¶7  This Court exercises plenary review over constitutional questions. *State v. Dugan*, 2013 MT 38, ¶ 14, 369 Mont. 39, 303 P.3d 755. A statute may be deemed

constitutionally overbroad if it includes within its scope conduct that is protected by the First Amendment. *Dugan*, ¶ 52.

¶8 We review questions on the sufficiency of the evidence in a criminal matter to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Weigand*, 2005 MT 201, ¶ 7, 328 Mont. 198, 119 P.3d 74. We review a jury's verdict to determine whether sufficient evidence exists to support the verdict, not whether the evidence could have supported a different result. *Weigand*, ¶ 7. It is within the province of the jury to weigh the evidence based on the credibility of the witnesses and determine which version of events should prevail. *Weigand*, ¶ 7.

¶9 A trial court has broad discretion in determining the relevance and admissibility of evidence. *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811. Thus, we review a trial court's evidentiary rulings for an abuse of discretion. *Derbyshire*, ¶ 19. A court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *Derbyshire*, ¶ 19. In exercising its discretion, however, the trial court is bound by the Rules of Evidence. *Derbyshire*, ¶ 19. Consequently, to the extent that the court's ruling is based on an interpretation of an evidentiary rule, our review is de novo. *Derbyshire*, ¶ 19.

¶10 Claims of ineffective assistance of counsel present mixed questions of law and fact that we review de novo. *State v. Johnston*, 2010 MT 152, ¶ 7, 357 Mont. 46, 237 P.3d 70.

**DISCUSSION**

¶11  *1. Whether the improper influence statute is unconstitutionally overbroad.*

¶12  A person commits the offense of threats and other improper influence in official matters "if the person purposely or knowingly . . . threatens harm to any person, the person's spouse, child, parent, or sibling, or the person's property with the purpose to influence the person's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter." Section 45-7-102(1)(a)(i), MCA.

¶13  For the first time on appeal, Spottedbear argues that § 45-7-102(1)(a)(i), MCA, is unconstitutionally overbroad. He asserts that we should review the statute because his trial counsel rendered ineffective assistance by failing to raise the constitutional issue below, because this Court may exercise plenary review of constitutional rights violations even where no objection has been made, and because this Court may review an unconstitutional statute under the plain error doctrine.

¶14  Spottedbear does not challenge the improper influence statute's constitutionality as applied to him; he contends instead that the statute is facially overbroad because it prohibits a substantial amount of protected speech. Spottedbear asserts that the statute's language is unconstitutionally overbroad under the First Amendment for three reasons: (1) the Legislature defines "harm" expansively; (2) the statute is not limited to threats of unlawful harm; and (3) by focusing on threats of harm aimed at influencing a public official's discretion, the statute targets "the type of message that lies at the First Amendment's heart." Thus, Spottedbear asserts that the "statute's plain language makes clear that it reaches far beyond proscribing unprotected speech and into proscribing

5

speech that is essential to our democracy." Because the statute's reach is not limited to unprotected speech, Spottedbear contends that the statute is distinguishable from statutes that we have upheld against overbreadth challenges. Spottedbear therefore argues that we should hold that the statute is unconstitutional and void his improper influence conviction in the process.

¶15    The overbreadth doctrine "is an exception to the general rule that statutes are evaluated in light of the situation and facts before the court." *State v. Lilburn*, 265 Mont. 258, 264, 875 P.2d 1036, 1040 (1994). Under the doctrine, a statute that "can be applied to constitutionally protected speech and expression may be found to be invalid in its entirety, even if it could validly apply to the situation before the court." *Lilburn*, 265 Mont. at 264, 875 P.2d at 1040. We have made clear, however, that a statute is unconstitutionally overbroad only if its overbreadth is not only "'real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *Lilburn*, 265 Mont. at 264-65, 875 P.2d at 1040 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S. Ct. 2908, 2918 (1973)).

¶16    The test for overbreadth therefore "is not whether hypothetical remote situations exist, but whether there is a significant possibility that the law will be unconstitutionally applied." *Lilburn*, 265 Mont. at 269, 875 P.2d at 1043 (citing *Broadrick*, 413 U.S. at 615, 93 S. Ct. at 2917-18). "In short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Lilburn*, 265 Mont. at 269, 875 P.2d at 1041 (quoting *Members of the City Council v. Taxpayers for Vincent*,

6

466 U.S. 789, 800-01, 104 S. Ct. 2118, 2126 (1984) (hereafter *Vincent*)). When there is no realistic danger or significant possibility that First Amendment protections will be meaningfully compromised, we have held consistently that any unconstitutional application of a statute should be addressed on a "case-by-case" basis. *E.g.*, *Mont. Supreme Court Comm'n on the Unauthorized Practice of Law v. O'Neil*, 2006 MT 284, ¶ 78, 334 Mont. 311, 147 P.3d 200; *State v. Nye*, 283 Mont. 505, 515, 943 P.2d 96, 103 (1997); *State v. Ross*, 269 Mont. 347, 356, 889 P.2d 161, 166 (1995); *Lilburn*, 265 Mont. at 270, 875 P.2d at 1044.

¶17 We are unpersuaded by Spottedbear's claim that his trial counsel rendered ineffective assistance by failing to raise the statute's alleged overbreadth below. In assessing whether counsel's performance was deficient, we look to "whether counsel's conduct fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *Whitlow v. State*, 2008 MT 140, ¶ 20, 343 Mont. 90, 180 P.3d 861. Spottedbear asserts that his counsel had "no plausible" justification for failing to raise a constitutional challenge because it would have ended Spottedbear's prosecution at its inception. But § 45-7-102(1)(a)(i), MCA, serves a plainly legitimate purpose—to deter people from threatening harm to a public servant in order to influence that person's actions as a public servant. Spottedbear acknowledges that his conduct falls within the statute's legitimate sweep. Given these surrounding circumstances, and our overbreadth precedent discussed above, Spottedbear's trial counsel reasonably may have concluded that an overbreadth challenge to the statute would not have been successful.

7

¶18 Indeed, when compared "to the statute's plainly legitimate sweep," Spottedbear would have a high hurdle to clear in showing how the statute adversely affects the rights of others in a "real" and "substantial" way. *Lilburn*, 265 Mont. at 264-65, 875 P.2d at 1040. Although Spottedbear points to "hypothetical remote situations" in which the statute could be applied unconstitutionally, he would have to have demonstrated a "realistic danger" or "a significant possibility that the law will be unconstitutionally applied." *Lilburn*, 265 Mont. at 265, 269, 875 P.2d at 1041, 1043. "[T]he mere fact that [Spottedbear's appellate counsel] can conceive of some impermissible applications of [the] statute," *Lilburn*, 265 Mont. at 265, 875 P.2d at 1041 (quoting *Vincent*, 466 U.S. at 800-01, 104 S. Ct. at 2126), is insufficient to overcome the "strong presumption that [trial] counsel's conduct [fell] within the wide range of reasonable professional assistance," *Whitlow*, ¶ 21.

¶19 The State prosecuted Spottedbear for conduct that plainly came within the statute's legitimate sweep. Whether threatening harm under the statute would apply properly to the hypothetical situations Spottedbear presents on appeal "is irrelevant. That was not the conduct for which he was convicted, and we do not find it necessary to address that argument." *Nye*, 283 Mont. at 516, 943 P.2d at 103. We decline to consider the statute's alleged overbreadth in this appeal. "To the extent that the statute may reach constitutionally protected expression," any constitutional deficiencies not implicated by Spottedbear's case can be addressed at that time. *Lilburn*, 265 Mont. at 270, 875 P.2d at 1044.

8

¶20    *2. Whether the State presented sufficient evidence that Spottedbear threatened harm to Officer Walker with the purpose to influence Officer Walker's discretion.*

¶21    Spottedbear contends that the State did not present sufficient evidence to prove beyond a reasonable doubt that he threatened Officer Walker with the requisite "purpose to influence" Officer Walker's discretion. Relying on *State v. Plenty Hawk*, 285 Mont. 183, 948 P.2d 209 (1997), Spottedbear emphasizes that he was "belligerent and uncooperative" before and after Officer Walker showed up and that his threats toward Officer Walker were "a continuation" of his "belligerent attitude." Accordingly, Spottedbear asserts that there is no evidence in the record upon which the jury could find that, "but for [Spottedbear's] purported purpose to influence Officer Walker's official discretion, he would not have threatened Officer Walker."

¶22    Relying on *State v. Motarie*, 2004 MT 285, 323 Mont. 304, 100 P.3d 135, and *State v. Keating*, 285 Mont. 463, 949 P.2d 251 (1997), the State contends that Spottedbear did not have to explicitly condition his threats in order to be convicted under the improper influence statute. The State asserts that the jury reasonably could have inferred from the evidence presented that Spottedbear threatened Officer Walker with the purpose to influence Officer Walker's charging discretion. The State points to the fact that Spottedbear did not threaten Officer Walker until he learned that Officer Walker intended to charge him with criminal trespass. The State alleges that Spottedbear's reliance on *Plenty Hawk* is misplaced because that case is factually distinguishable. Finally, the State asserts that while the evidence could have supported a contrary

9

conclusion, it does not follow that there was insufficient evidence to support the jury's verdict.

¶23 The improper influence statute prohibits "threaten[ing] harm" to a public servant or to a public servant's family or property "with the purpose to influence" that person's actions as a public servant. Section 45-7-102(1)(a)(i), MCA. To show purpose, the State had to prove that it was Spottedbear's "conscious object" to influence Officer Walker's discretion. Section 45-2-101(65), MCA. Accordingly, the State had the burden of proving beyond a reasonable doubt that Spottedbear not only threatened Officer Walker with harm, but that he did so with the conscious object to influence Officer Walker's actions as a public servant. While each element of an offense must be proven by sufficient evidence, *Weigand*, ¶ 7, "[t]he elements of a charged offense are factual in nature and their existence must be determined by the jury," *State v. Gladue*, 1999 MT 1, ¶ 40, 293 Mont. 1, 972 P.2d 827.

¶24 We have consistently held that "circumstantial evidence alone is sufficient to obtain a conviction." *State v. Clausell*, 2001 MT 62, ¶ 31, 305 Mont. 1, 22 P.3d 1111 (quoting *State v. Lancione*, 1998 MT 84, ¶ 37, 288 Mont. 228, 956 P.2d 1358) (internal quotations omitted). A person's mental state "is rarely susceptible of direct or positive proof and therefore must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence." *Clausell*, ¶ 31 (citation and internal quotations omitted). As such, whether a defendant acted with purpose "may be inferred from circumstantial evidence such as the acts of the accused and the facts and circumstances surrounding the offense." *Clausell*, ¶ 31. Such evidence "need only be of

10

sufficient quality and quantity to legally justify a jury in finding guilt beyond a reasonable doubt, taking into consideration all of the facts and circumstances surrounding the charged offense collectively." *Clausell*, ¶ 31.

¶25 In *Plenty Hawk*, we addressed whether there was sufficient evidence to sustain Plenty Hawk's conviction of intimidation under § 45-5-203, MCA. *Plenty Hawk*, 285 Mont. at 186, 948 P.2d at 210-11. Similar to here, Plenty Hawk argued that the State failed to present evidence that his threats towards a deputy were made "with the purpose to cause another to perform or to omit the performance of any act." *Plenty Hawk*, 285 Mont. at 186, 948 P.2d at 211 (quoting § 45-5-203(1), MCA). The evidence established that Plenty Hawk was intoxicated, combative, and belligerent when deputies and ambulance personnel first approached him lying in a roadway. *Plenty Hawk*, 285 Mont. at 184, 948 P.2d at 209-10. Plenty Hawk continued his combative behavior after being assured "that he was not under arrest" and being placed in a holding cell to be cleaned up and examined more thoroughly. *Plenty Hawk*, 285 Mont. at 184, 948 P.2d at 210. After Plenty Hawk "took a swing" at an ambulance attendant who was attempting to take his pulse in the holding cell, a deputy informed Plenty Hawk "that he was under arrest for the charge of Intoxicated Pedestrian and that he would be spending the night in jail." *Plenty Hawk*, 285 Mont. at 184-85, 948 P.2d at 210. During the booking process, Plenty Hawk challenged a deputy to a fight and "declared that as soon as he got out of jail he was going to kick [the deputy's] ass and terrorize [him] and his family." *Plenty Hawk*, 285 Mont. at 185, 948 P.2d at 210. Plenty Hawk apologized for his behavior the next day. *Plenty Hawk*, 285 Mont. at 185, 948 P.2d at 210.

11

¶26 The State contended "that Plenty Hawk's purpose in making the threats was to cause [the deputy] to release him." *Plenty Hawk*, 285 Mont. at 186, 948 P.2d at 211. In concluding that there was "no evidence in the record that the threats were made for any particular purpose," we noted that Plenty Hawk "was belligerent and uncooperative from the time" the deputy approached him and that he was combative with ambulance attendants "prior to being informed he was under arrest." *Plenty Hawk*, 285 Mont. at 186, 948 P.2d at 211. We opined that "Plenty Hawk was simply drunk and belligerent" and that "[a]t no time did Plenty Hawk state what act he might want [the deputy] to do or to omit and the State has provided no evidence to show what specific act Plenty Hawk was seeking to have done or omitted." *Plenty Hawk*, 285 Mont. at 187, 948 P.2d at 211. We therefore held that there was insufficient evidence to support the jury's verdict on the intimidation charge. *Plenty Hawk*, 285 Mont. at 187, 948 P.2d at 211.

¶27 In *Motarie*, we addressed whether the State had proven that Motarie acted with the requisite purpose under §§ 45-5-203(1) and 45-7-206(1), MCA. *Motarie*, ¶ 5. In that case, Motarie called Iverson, who had reported him for allegedly poaching an elk, and threatened to kill Iverson prior to Motarie's trial. *Motarie*, ¶¶ 2-3. Motarie relied on *Plenty Hawk* in arguing that the State failed to provide evidence of his purpose in making the threats. *Motarie*, ¶ 7. We distinguished *Plenty Hawk* by noting that "Plenty Hawk was behind bars when he" threatened the deputy. *Motarie*, ¶ 6. We differentiated our holding in *Plenty Hawk* further, explaining that, "[b]y threatening the deputy with violence once released from his cell, Plenty Hawk would have made the deputy even more disposed to leaving Plenty Hawk in the cell." *Motarie*, ¶ 6.

¶28 We noted that the record in *Motarie* spoke "of a more invidious purpose" because "Iverson was the central witness to the State's poaching case against Motarie." *Motarie*, ¶ 7. We reaffirmed that, as a state of mind, criminal intent "is rarely susceptible of direct or positive proof and therefore must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence." *Motarie*, ¶ 8 (citation and internal quotations omitted). We concluded, therefore, that "[s]een in the light most favorable to the prosecution, a reasonable jury could have determined that Motarie intended to stop Iverson from continuing his cooperation in Motarie's prosecution and, thus, he had the requisite purpose" under the statutes. *Motarie*, ¶ 8.

¶29 Similarly, in *Keating*, we upheld a conviction of improper influence under § 45-7-102(1)(a)(i), MCA. *Keating*, 285 Mont. at 477, 949 P.2d at 259. In that case, officers attempted to serve Keating with process and he told them to leave his property. *Keating*, 285 Mont. at 469, 949 P.2d at 254. After the officers left, Keating called 911 and threatened to kill any officer who entered his property. *Keating*, 285 Mont. at 469, 949 P.2d at 254-55. On appeal, Keating argued "that the State did not establish that his threat to kill officers coming on his property to serve process was made for the purpose of influencing an exercise of discretion." *Keating*, 285 Mont. at 477, 949 P.2d at 260. In upholding Keating's conviction, we noted that "Keating started yelling when told the purpose of the [officers'] visit," and that Keating made the threats shortly after the officers left. *Keating*, 285 Mont. at 479-80, 949 P.2d at 261. We concluded:

> The evidence regarding Keating's awareness of the [officers'] reason for being at his residence . . . and his threat after the [officers] attempted to serve him with process was sufficient to permit the jury to infer that

13

> Keating purposely or knowingly threatened the [officers] with the purpose to influence their exercise of discretion regarding where and when to accomplish service of process on him.

*Keating*, 285 Mont. at 480, 949 P.2d at 261.

¶30 Similar to *Plenty Hawk*, the evidence here establishes that Spottedbear was intoxicated and agitated when Officer Walker first approached him. The evidence also shows, however, that unlike in *Plenty Hawk*, Spottedbear was not combative with the officer prior to being placed under arrest. The evidence establishes further that Spottedbear did not begin threatening Officer Walker until after Officer Walker informed Spottedbear that he was going to charge him with criminal trespass. At that point, Spottedbear became more agitated and brought up the previous incident in which he had assaulted Officer Walker. Spottedbear then yelled that he had seen Officer Walker and his "fat fucking wife" out in public. After Officer Walker advised him to be quiet, Spottedbear then yelled, multiple times: "I will fucking kill you, your fat wife and your whole family."

¶31 Plenty Hawk's threats to kill the officer after he got out of jail could have made the officer even more disposed to keep Plenty Hawk in jail. *Motarie*, ¶ 6. Here, in contrast—viewing the evidence in the light most favorable to the prosecution—the jury could have found that Spottedbear thought that his threats to kill Officer Walker and his family might influence Officer Walker's decision to actually charge him with criminal trespass. Moreover, unlike in *Plenty Hawk*, the State introduced evidence showing as much. Officer Walker testified that he still had discretion and the ability to decide whether he was going to cite Spottedbear for criminal trespass at the time Spottedbear

14

threatened him and his family. Officer Walker testified that Spottedbear's threats concerned him because he had seen Spottedbear near his house, his wife was seven months pregnant, and Spottedbear had previously assaulted him. Finally, Officer Walker testified that intoxicated people had threatened him in the past, but that this time was different because it was the first time anyone had ever threatened his family, and Spottedbear made clear that he had seen Officer Walker and his wife in public.

¶32 True, Spottedbear did not explicitly state the condition upon which his threats were based. But such direct proof is unnecessary to show Spottedbear's purpose to influence, which could "be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence." *Motarie*, ¶ 8; *Clausell*, ¶ 31; *see Keating*, 285 Mont. at 479-80, 949 P.2d at 261. Although the evidence could have supported a finding that Spottedbear was generally belligerent and did not have the purpose to influence Officer Walker's discretion, our inquiry on appeal is whether "sufficient evidence exists to support the verdict." *Weigand*, ¶ 7. The jury weighed the conflicting evidence based on Officer Walker's credibility and determined that the State's version of the events should prevail. *Weigand*, ¶ 7. Such a determination is "exclusively within the province of the trier of fact." *State v. Bower*, 254 Mont. 1, 8, 833 P.2d 1106, 1111 (1992).

¶33 We conclude, viewing the evidence in the light most favorable to the prosecution, that any rational trier of fact could have found beyond a reasonable doubt that Spottedbear threatened Officer Walker and his family with the purpose to influence Officer Walker's discretion in charging him with criminal trespass. Accordingly, the

15

State presented sufficient evidence to convict Spottedbear of improper influence under § 45-7-102(1)(a)(i), MCA.

¶34    *3. Whether the State presented sufficient evidence to convict Spottedbear of criminal trespass.*

¶35    Criminal trespass to property requires the State to show that "(1) a 'person knowingly,' (2) 'enters or remains unlawfully in,' (3) an 'occupied structure' or 'the premises of another.'" *State v. Robertson*, 2014 MT 279, ¶ 19, 376 Mont. 471, 336 P.3d 367 (quoting § 45-6-203(1), MCA). A person who is "licensed, invited, or otherwise privileged to do so" cannot be convicted of criminal trespass. Section 45-6-201(1), MCA; *Robertson*, ¶¶ 19, 24. Such privilege, however, "may be revoked at any time by personal communication of notice by the landowner or other authorized person to the entering person." Section 45-6-201(1), MCA. A person "remains unlawfully" pursuant to statute—and therefore commits criminal trespass—if the person remains upon the premises after his or her privilege is revoked. Sections 45-6-201(1), -203(1), MCA.

¶36    Spottedbear asserts that he—along with all members of the public—had a license to be in the Wal-Mart store. Accordingly, Spottedbear contends, "to secure a trespass conviction in a case where a person at one time had a license to be on a property, the State must present adequate proof that the landowner or another authorized person revoked the license." Spottedbear argues that the State presented no evidence that an authorized person revoked his license to be in the store. Spottedbear notes that Officer Walker—who was the only witness at the trial—testified that he, and not an authorized person, told Spottedbear to leave the property.

16

¶37    The State does not dispute that Spottedbear had a license to be at the store. The State argues, however, that it presented evidence that a store employee called the police and the store's manager informed Officer Walker of Spottedbear's behavior in the store. At that point, Officer Walker advised Spottedbear to leave. Thus, the State contends that "a rational jury could have inferred that the manager not only desired that Spottedbear leave the store but that she authorized the officers to notify him that his privilege to remain in the store had been revoked and to escort him from the store on her behalf."

¶38    Officer Walker testified that he spoke with Janet Sherod upon arriving at the scene. He testified further that after speaking to Sherod, he advised Spottedbear to leave the premises. On cross-examination, Officer Walker testified that Sherod told him that "her employees" had called the police because another customer had accused Spottedbear of shoplifting and that an argument ensued. Officer Walker testified further that Sherod told him that Spottedbear had been yelling and swearing inside the store.

¶39    Although a jury could infer from Officer Walker's testimony that an authorized person revoked Spottedbear's license to be at Wal-Mart, the State presented no evidence that Spottedbear remained unlawfully after his privilege was revoked. Officer Walker testified that after asking Spottedbear to leave, Spottedbear walked towards the exit, turned around and yelled at Sherod, and was then placed under arrest. Even viewing this evidence in the light most favorable to the prosecution, we conclude that no rational trier of fact could have found beyond a reasonable doubt that Spottedbear remained unlawfully after Officer Walker directed him to leave. Accordingly, we conclude that the State did not present sufficient evidence to convict Spottedbear of criminal trespass.

17

¶40    *4. Whether the District Court properly admitted evidence of Spottedbear's prior incident with Officer Walker.*

¶41    Spottedbear filed a motion in limine seeking to limit the admission of evidence relating to his prior incident with Officer Walker. Spottedbear argued that such evidence had little probative value when weighed against the high likelihood of substantial prejudice to Spottedbear. In addressing Spottedbear's motion, the court stated in open court that details regarding the prior incident were

> fair game except the conviction . . . . So I don't want any testimony that he's actually convicted of any crimes in . . . the prior incident involving Officer Walker. So all of the other circumstances surrounding the offenses are admissible, but the actual conviction itself, I think you can get in everything you need under [M. R. Evid.] 404(b) without . . . admitting evidence of the actual conviction. . . .
>
> And for the record, under Rule 404(b), . . . the Court finds that the evidence of the actual convictions would be unduly prejudicial, would confuse the issues, and are unnecessary in order to show the knowledge, intent and motive that the State is trying to prove.

Before the State introduced the evidence of the prior incident during trial, the Court read the following limiting instruction to the jury:

> The State will now offer evidence that the Defendant at another time engaged in other wrongs or acts. That evidence is not admitted to prove the character of the Defendant, or to show he acted in conformity therewith.
>
> The only purpose of admitting that evidence is to show proof of motive, opportunity, plan, knowledge, identity, or absence of mistake or accident. You may not use that evidence for any other purpose.
>
> The Defendant is not being tried for that other wrong or act. He may not be convicted for any other offense than that charged in this case. For the jury to convict a Defendant of any other offense than that charged in this case may result in unjust double punishment of the Defendant.

18

Both the State and Spottedbear's counsel questioned Officer Walker about the prior incident and discussed the prior incident in their closing arguments to support their respective arguments. The District Court gave the limiting instruction again prior to the closing arguments.

¶42 On appeal, Spottedbear contends that the District Court improperly allowed the State to present evidence of his prior incident with Officer Walker. Spottedbear asserts that the prior incident was not relevant and was thus inadmissible under the Montana Rules of Evidence. Spottedbear asserts further that the incident's probative value "was extremely limited if not non-existent under the theory argued by the State" because it showed that physically assaulting Officer Walker—let alone just threatening him—would not influence his discretion, and the State's assertion that it was relevant to demonstrate the severity of Spottedbear's threats was misplaced because the severity of the threat is not an element of improper influence.

¶43 More, Spottedbear alleges, the prior incident's probative value was outweighed by its danger of unfair prejudice. Spottedbear argues that the message that the prior incident sent to the jury was that "Spottedbear is someone who follows through with his threats of violence." By focusing on the prior incident and the severity of his threats, Spottedbear asserts, the "State's argument invited the jury to ignore the law and convict on an improper basis." Finally, Spottedbear contends that the District Court's limiting instruction did not minimize the prejudice caused by the prior incident's admission, especially when "the State's theory of relevance was unintuitive and risked much unfair prejudice."

¶44 Generally, "[a]ll relevant evidence is admissible" unless otherwise provided by law. M. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M. R. Evid. 401. M. R. Evid. 404(b), however, places a limitation on the admission of otherwise relevant evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Nevertheless, prior act evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M. R. Evid. 404(b). In other words, "[e]vidence of prior bad acts is not admissible if it is offered for a purpose that requires the inference from bad act to bad person to guilty person, but may be admissible if it proves a material issue without requiring any inference to the defendant's criminal disposition." *State v. Franks*, 2014 MT 273, ¶ 14, 376 Mont. 431, 335 P.3d 725 (citations and internal quotations omitted).

¶45 Even if such evidence "is offered for a valid non-propensity purpose, M. R. Evid. 404(b) may require its exclusion if the nature of the evidence might tempt the jury to decide the case against the defendant on an improper propensity basis." *Franks*, ¶ 15 (citation and internal quotations omitted).

> In this way, M. R. Evid. 404(b) must be viewed in concert with M. R. Evid. 403, which allows the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Evidence that is offered for a valid purpose under M. R. Evid. 404(b) is still subject to the balancing test prescribed by M. R. Evid. 403.

20

*Franks*, ¶ 15 (citing *State v. Stewart*, 2012 MT 317, ¶ 67, 367 Mont. 503, 291 P.3d 1187). M. R. Evid. 403, in turn, "does not require the exclusion of relevant evidence simply because it is prejudicial." *Stewart*, ¶ 68. Rather, the rule "confers discretion on the trial judge to exclude relevant evidence that poses a danger of 'unfair' prejudice, but only if the danger of unfair prejudice 'substantially outweigh[s]' the evidence's probative value." *Stewart*, ¶ 68 (quoting M. R. Evid. 403). The danger of unfair prejudice substantially outweighs probative value "when the evidence will prompt the jury to decide the case on an improper basis." *Stewart*, ¶ 68 (citation omitted). A district court has "broad discretion to admit or exclude evidence under M. R. Evid. 403." *State v. Pulst*, 2015 MT 184, ¶ 21, 379 Mont. 494, 351 P.3d 687.

¶46 Under M. R. Evid. 404(b), the State could not use evidence of the prior incident to prove Spottedbear's character in order to show that he acted "in conformity therewith." As the District Court noted, however, the prior incident could be used under M. R. Evid. 404(b) "in order to show the knowledge, intent and motive that the State [was] trying to prove." Our review of the record establishes that the State used the prior evidence for just such a purpose. Spottedbear's arguments to the contrary are belied by the fact that during the trial he used the prior incident to argue that he did not threaten Officer Walker with the purpose to influence Officer Walker's discretion. In fact, Spottedbear used the prior incident to demonstrate that he had a propensity for making such threats and knew that threats would not influence Officer Walker. The prior incident, therefore, was used by both parties to persuade the jury in determining Spottedbear's purpose under § 45-7-102(1)(a)(i), MCA. Spottedbear has not demonstrated that the danger of unfair prejudice

21

from introducing evidence of the prior incident substantially outweighed the evidence's probative value. Accordingly, we conclude that the District Court did not abuse its discretion in allowing evidence of the prior incident under M. R. Evid. 403 and 404(b).

¶47   *5. Whether Spottedbear's trial counsel rendered ineffective assistance of counsel.*

¶48   Spottedbear asserts that his trial counsel's failure to object to the State's definition of "purpose" compromised the improper influence verdict, and constitutes ineffective assistance of counsel. Spottedbear points out that the District Court instructed the jury that "[a] person acts purposely, or with a purpose, when it is the person's conscious object to engage in conduct of that nature." Such an instruction, Spottedbear contends, fails to adequately instruct the jury on the meaning of "purpose" as used in § 45-7-102(1)(a)(i), MCA, because the statute requires that a person act purposely to cause a result, not to engage in conduct. Spottedbear argues that his counsel's failure to object to the State's jury instruction on "purpose" is "glaring and lacks plausible justification" and represents a "failure to use the law to bolster [his] theory of the case." As such, Spottedbear contends that his counsel's failure to object "lessened the State's burden" and prejudiced him. Spottedbear contends further that "[t]here is a reasonable possibility that, but for trial-counsel's failure to procure proper instruction, the trial would have ended differently," which requires a new trial.

¶49   We apply a two-part test in analyzing claims of ineffective assistance of counsel. It requires a defendant to "demonstrate (1) that counsel's representation was deficient and (2) that counsel's deficiency was prejudicial by establishing that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been

22

different." *Johnston*, ¶ 15. A defendant must satisfy both prongs of this test "in order to prevail on an ineffective assistance of counsel claim; thus, an insufficient showing on one prong negates the need to address the other." *State v. Mitchell*, 2012 MT 227, ¶ 21, 366 Mont. 379, 286 P.3d 1196. The inquiry under the second prong "focuses on whether counsel's deficient performance renders the trial result unreliable or the proceeding fundamentally unfair." *Mitchell*, ¶ 22.

¶50 We decline to consider whether Spottedbear's counsel provided deficient representation by failing to object to the District Court's "purpose" instruction. Spottedbear has not established that there was a reasonable probability that, but for his counsel's error, the result of the proceeding would have been different had a result-based definition of purpose been given. The District Court instructed the jury as follows:

> To convict the Defendant of the charge of threat and other improper influence in official matters, the State must prove the following elements:
>
> 1. That the Defendant threatened harm to Officer Walker, his spouse, child, parent, or sibling:
>
> AND
>
> 2. That the Defendant did so with the purpose to influence the exercise of discretion as a public servant[.]

This instruction made clear that Spottedbear had to act with the "purpose to influence." Even with the conduct-based definition of "purpose," Spottedbear has not, and cannot, demonstrate that the District Court's instruction "renders the trial result unreliable or the proceeding fundamentally unfair." *Mitchell*, ¶ 22.

23

**CONCLUSION**

¶51 We affirm Spottedbear's conviction of improper influence and reverse his conviction of criminal trespass. The case is remanded for entry of an amended judgment in accordance with this Opinion.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT